DEFENDANT
EXHIBIT

**1**

⚜ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
BARTOW COUNTY, GEORGIA·

**SUCV2023001640**

DEC 13, 2023 02:10 PM

Melba Scoggins, Clerk
Bartow County, Georgia

## IN THE SUPERIOR COURT OF BARTOW COUNTY
## STATE OF GEORGIA

JAMES JOHN DUNCAN, JR.

                Plaintiff,

vs.

BARTOW COUNTY, a political subdivision
of the State of Georgia;
CLARK MILLSAP, in his individual capacity
and in his official capacity as Sheriff of
Bartow County, Georgia;
CORRECTHEALTH BARTOW, LLC;
MADISON BANKSTON;
CHARLOTTE HALL;
TONYA JOSEPH;
CHRISTINA CATRON;
REBECCA HAMILTON;
SHEILA WILLIAMS;
PATRICIA LEE;
KELLY KURTZ;
PHILLIP NOWLIN;
FLESHA MYRICKS;
JENNIFER PULIDO;
CHANTAL DESSOURCES;
CALLIE EVANS; AND
FIRST NAME UNKNOWN SHIRLEY
                Defendants.

Civil Action File No:

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

    COMES NOW, Plaintiff James John Duncan, Jr. (hereinafter "Plaintiff" or "Mr. Duncan")

and files this Complaint for Damages and Demand for Jury Trial against the named Defendants,

and shows the Court as follows:

# FACTS

1.

On August 15, 2022, Mr. Duncan went through the intake process at Bartow County Jail, located at 104 Zena Dr, Cartersville, GA 30121 ("the Jail"). Defendants checked his vitals, finding that his initial blood pressure was 168/100 and an immediate recheck revealed a blood pressure reading of 162/98.

2.

On August 18, 2022, Mr. Duncan submitted a written medical request to Defendants requesting blood pressure medication for his hypertension.

3.

On September 1, 2022, Mr. Duncan reported to the Jail infirmary complaining of chest pain and shortness of breath for the past two days. His vitals were taken but no further medical treatment was provided by Defendants.

4.

Later the same day on September 1, 2022, Mr. Duncan submitted a written medical request again informing Defendants he was experiencing chest pains and shortness of breath. No further medical evaluation or treatment was provided to him by anyone. Instead, Bartow County Jail Nurse Defendant Bankston responded to him through the written messaging system with the following: "Seen in medical today. I have you scheduled to follow up with our medical provider next week. Please continue taking medications as prescribed and notify staff if symptoms begin again."

5.

Chest pain and shortness of breath are two cardinal signs of angina. Patients exhibiting these symptoms, like Mr. Duncan was, should be promptly referred to a cardiologist for further cardiac evaluation. Mr. Duncan was not referred to a cardiologist.

6.

Mr. Duncan's symptoms continued and so on September 8, 2022, he again told Defendants of his symptoms. He spoke with Defendant NP Charlotte Hall while at the medcart, telling her that he was experiencing chest pain that worsened with breathing. Nurse Hall documented this complaint in his file but no evaluation or treatment was provided.

7.

On September 23, 2022 Mr. Duncan again submitted a written medical request for treatment since he still had not received any treatment addressing his symptoms. He informed Defendants that he was experiencing chest pain and numbness in his left arm, that he could not feel his hand, and that the pain awoke him from sleep. He further raised that though he was told by Defendants that it was not a heart problem, he was still concerned that something was happening that was preventable. Rather than provide any medical treatment or evaluation, Defendants responded through Nurse Joseph who wrote the following to him in the Jail's messaging system: "you are on pain med and you have a chronic care clinic visit scheduled to see the doctor."

8.

On September 29, 2022, Mr. Duncan again submitted a written medical grievance to Defendants informing the Bartow County Jail staff and medical team that he had been having chest pains and that he did not know why the problem was not being addressed. Having been made by

3

Defendants to feel that he was annoying them with his medical issues, Mr. Duncan even apologized "for any inconvenience."

9.

Rather than provide appropriate medical treatment, Defendants instead decided that a written response was sufficient. Nurse Joseph callously stated the following through the messaging system: "you have labs ordered and you have a chronic care visit scheduled with the doctor. Explain the chest pains in more detail. What is it you are wanting? If you feel it is a heart attack, then tell the tower. Do you need to be in medical? You have been caught hoarding meds. You are in your 40's and on a few meds, do not be laying down after eating. Get some activity in. Let the tower know if you are just hurting so ba[d] that you cannot wait until the scheduled doctor's visit."

10.

Faced with still worsening symptoms, Mr. Duncan submitted yet another written request for treatment again on October 5, 2022. Mr. Duncan again informed them of his symptoms and suggested that perhaps his blood pressure medication might need to be changed. Still no treatment was provided. Instead, Nurse Shirley responded through the system that "you only take it 42% of the time. I will place you on BP checks for a couple of days." LPN Christina Catron noted in his medical records that he had an elevated blood pressure reading at his vital sign checks but that no new orders were entered at the time, and that med compliance was 37%.

11.

In addition to the other reported symptoms, Mr. Duncan also began experiencing blurry vision, burning eyes, and busted blood vessels in his eyes. He reported these symptoms in writing Defendants on October 7, 2022. He was provided with antibiotic eye drops and no other treatment.

12.

On October 17, 2022, Mr. Duncan submitted a written medical request informing Defendants that he believed his blood pressure medication was causing severe chest pains because the severity of his pain increased when he took the medication. He requested a change in his medications because of this and asked when his provider appointment was to take place. Nurse Bankston responded on the same day in writing with "I've got you down for more vital sign checks this week, scheduled to see the medical provider and you have a chronic care appointment coming up as well."

13.

Mr. Duncan returned again to medical October 18, 2022 at 11:34 with a chief complaint of chest pain. LPN Rebecca Hamilton took his vitals and notified the provider, who ordered an EKG. Mr. Duncan was sent back to his dorm.

14.

Mr. Duncan returned to medical again at about at 12:28 still complaining of his symptoms. His reported that his chest pain had improved some so he was sent back to his dorm.

15.

Mr. Duncan returned to medical again around 22:00 on October 18, 2022. His chief complaint again was chest pain. LPN Christina Catron took his vitals and performed an EKG. She called the EKG the results into the on-call physician, Defendant Phillip Nowlin, MD, who informed her that he should go to the ER for evaluation. Mr. Duncan went back to his dorm.

16.

On October 19, 2022 at 21:39, Mr. Duncan reported back to medical, again with a chief complaint of chest pain. Medical staff refused to assist him and instead told him to take his

medication. He again reported that his medication made his chest pain worse. Mr. Duncan requested to go to the hospital. Defendants refused to provide any treatment and took no action; they sent him back to his dorm.

17.

Left with no other option, Mr. Duncan called his girlfriend of 20 years who was outside the Jail and asked her to call 911 to get him an ambulance. She did and 911 dispatch called the Jail around 21:45 to provide help. Instead, Jail staff told the dispatcher that Mr. Duncan was "fine" and did not need an ambulance. As a result of Defendants' instruction, no ambulance came.

18.

It was only after additional, further pleas by Mr. Duncan that Defendants finally transported him to Piedmont Cartersville Hospital that night. Mr. Duncan arrived at approximately 22:25 and it was quickly determined by emergency room staff that he was having a heart attack with 100% blockage in his left anterior descending artery. Emergency surgery was performed to place stents and during this surgery it was further determined that there was also blockage of his right coronary artery. A subsequent surgery was scheduled for a few days later to treat the second blockage. Unfortunately, Mr. Duncan experienced a second heart attack the following day, which resulted in an acceleration of the second surgery. His right coronary artery was treated by stent placement. Further evaluation revealed ischemic cardiomyopathy and an ejection fraction of 20-34%.

19.

On October 21, 2022, Mr. Duncan was discharged from the hospital. The hospital informed Defendants that he required a Life Vest but Defendants never obtained one for him.

6

20.

On November 12, 2022, Mr. Duncan was transported again from the Jail to the Emergency Department at Piedmont Cartersville Hospital to be evaluated for possible heart failure after experiencing episodes of syncope. He was discharged on November 15, 2022. His Ejection Fraction was 30-35%.

21.

The following is what Defendants should have done, which they failed to do:

A. Diagnose Mr. Duncan as having an evolving cardiac problem and being in cardiac distress;

B. Properly evaluate Mr. Duncan's changing condition;

C. Properly assess and evaluate Mr. Duncan as having a heart attack and/or being at increased risk of having a heart attack;

D. Promptly report signs and symptoms of an emerging cardiac condition to a cardiologist;

E. Promptly, but no later than September 1, 2022 when Mr. Duncan reported experiencing chest pain and shortness of breath, refer him to a cardiologist for cardiac workup to properly evaluate his emerging cardiac condition; and

F. Immediately procure a Life Vest for Mr. Duncan upon his return to Bartow County Jail from Cartersville Medical Center.

22.

Defendants' failure to adhere to the standard of care as outlined above in paragraph 21 resulted in significant injuries and pain and suffering to Mr. Duncan. Had they adhered to the standard of care as outlined above, Mr. Duncan would not have experienced his heart attacks and would not have sustained severe heart damage. As a direct result of Defendants' actions and omissions, Mr. Duncan now has significant physical limitations due to his heart damage, he

7

requires lifelong medical therapy, and his lifespan and quality of life have been reduced. He is now at a high risk for sudden cardiac death and a 50% risk of dying in the next five years as a result of the acts and omissions of Defendants.

23.

All Defendants were aware that Mr. Duncan was experiencing symptoms of cardiac distress and that he required swift medical intervention. And they were further aware that failing to provide the necessary medical intervention in Mr. Duncan's situation would lead to heart attack, heart damage, and reduced life span and quality of life.

24.

Defendants' reckless failure to provide proper medical care despite knowing Mr. Duncan was experiencing a potentially lethal cardiac event posed an unreasonable risk of serious injury to his health and safety.

25.

Defendants' actions and omissions led to the injuries of Mr. Duncan, his pain and suffering, and lost wages and earning capacity.

26.

The Defendants named in this lawsuit and discussed below are (1) Bartow County Jail employees, staff and agents, including medical personnel, who were aware of Mr. Duncan's life-threatening medical needs (namely, his cardiac condition), and (2) supervisors, policy-makers, government bodies, and medical entities that created policies and procedures that caused a gross, systemic lack of basic medical care for Bartow County Jail inmates, including Mr. Duncan.

8

27.

In accordance with O.C.G.A. §§ 36-11-1 and 50-21-26, the appropriate Defendants were sent an Ante Litem Notice on July 21, 2023 via certified mail, return receipt requested (attached hereto as Exhibit 1).

## PARTIES

### I.     Plaintiff James John Duncan, Jr.

28.

Plaintiff James John Duncan, Jr. is a Georgia resident and subject to the jurisdiction of this Court. He was at all times relevant to this Complaint in the custody and care of Defendants, the majority of time being at the Bartow County Jail.

### II.     Defendants

#### A. Bartow County

29.

Defendant Bartow County is a political subdivision of the State of Georgia and subject to the jurisdiction of this Court.  Service may be perfected upon this Defendant through the Office of the County Commissioner Steve Taylor, located at 135 W Cherokee Ave, Bartow County, Georgia 30120.  Defendant Bartow County is subject to the jurisdiction of this Court and venue is proper.

30.

It is the responsibility of Defendant Bartow County to maintain its inmates and provide its inmates with needed medical and hospital attention.

31.

It is the responsibility of Defendant Bartow County to establish and implement adequate policies and procedures which enable the Jail to maintain its inmates and provide its inmates with timely needed medical and hospital attention, particularly in the context of a potentially fatal medical condition.

32.

Defendant Bartow County was responsible for, and knowingly promulgated, enforced, and allowed to persist, policies and procedures of the Jail that, among other things:

    a. Caused too few qualified employees, staff and agents, including medical personnel, to be hired at the Jail;

    b. Caused the Jail to have inadequate space to enable it to provide adequate medical care to its inmates;

    c. Caused the Jail to have inadequate resources to enable it to provide adequate medical care to its inmates;

    d. Caused the Jail to have inadequate training and supervision of its employees, staff and agents, including medical personnel, resulting in the inadequate delivery of medical care.

33.

Defendant Bartow County is also responsible for the training and supervision of Jail employees, staff, and agents, including medical personnel.

34.

Defendant Bartow County failed to adequately train or supervise its Jail employees, staff, and agents, including medical personnel.

35.

The Jail staff and employees, including medical physicians, nurses and staff rendering services to Mr. Duncan were employees/agents of Defendant Bartow County and/or Bartow County Sheriff's Office ("BCSO") acting in the course and scope of their employment/agency.

36.

At the times relevant to this Complaint, Defendant Bartow County knew that inmates at the Jail were not receiving adequate medical care for serious medical needs such as emerging life-threatening cardiac conditions and failed to take reasonable steps to address the problem.

37.

At the times relevant to this Complaint, Defendant Bartow County knew that the Jail would not be able to provide inmates with adequate medical care for serious and /or emergency medical needs should the need arise, such as emerging life-threatening cardiac conditions, and failed to take reasonable steps to address the problem.

38.

Defendant Bartow County, through its employees and agents, also had actual knowledge of Mr. Duncan's condition, specifically that he was experiencing chest pain with increasing frequency and severity, shortness of breath, numbness in his arm, and other symptoms, and that he was experiencing symptoms of a life-threatening cardiac condition that would lead to serious injury such as heart attack, heart damage, and shortened lifespan and quality of life if left untreated. Despite having this knowledge and knowing the risk of failing to provide proper medical care,

11

such as cardiac intervention and treatment, Defendant Bartow County failed to respond reasonably to address Mr. Duncan's needs.

39.

Defendant Bartow County knowingly permitted the policy, custom, and practice of understaffing to persist throughout the Jail.

40.

Defendant Bartow County knowingly permitted the policy, custom, and practice of denying inmates access to medical care at the Jail to persist.

41.

Defendant Bartow County knowingly permitted to persist the policy, custom, and practice of failing to respond to serious and/or emergency medical needs, such as emerging cardiac conditions, in a timely and adequate manner.

42.

Defendant Bartow County knew that its failure to train and supervise reflected deliberate indifference to serious medical needs.

43.

In addition to liability through its own actions, Defendant Bartow County is also liable under the doctrine of *Respondeat Superior* for the acts and omissions of its officials and employees, as well as for the enforcement of its policies, practices, and customs that have violated Mr. Duncan's rights.

12

44.

Defendant Bartow County's actions exhibited deliberate indifference to the safety and well-being of Mr. Duncan and subjected him to the unnecessary and wanton infliction of pain, which constituted cruel and unusual punishment.

**B.  Clark Millsap**

45.

At all times relevant to this Action, Clark Millsap was the Sheriff of Bartow County ("Defendant Millsap").  Defendant Millsap was responsible for the operations of the BCSO, including the Jail.  Defendant Millsap was responsible for the day-to-day operations of the Jail, and in his official capacity as Sheriff, had custody, control, and charge of the jail and inmates.  At all relevant times, Defendant Millsap acted under color of state law.  Defendant Millsap is being sued for damages in both his individual and his official capacities.

46.

Defendant Millsap is a resident and citizen of the State of Georgia, in Bartow County, and may be served with process at 104 Zena Drive, Cartersville, GA 30121.  Defendant Millsap is subject to the jurisdiction of this Court and venue is proper.

47.

The Jail staff and employees, including medical physicians, nurses and staff rendering services to Mr. Duncan were employees/agents of Defendant Millsap and/or BCSO, acting in the course and scope of their employment/agency.

48.

13

As the Sheriff of Bartow County, Defendant Millsap was responsible for furnishing Bartow County inmates with medical aid.

49.

Defendant Millsap was responsible for, and knowingly promulgated, enforced, and allowed to persist, policies and procedures of the Jail that, among other things:

    a.  Caused too few qualified employees, staff and agents, including medical personnel, to be hired at the Jail;

    b.  Caused the Jail to have inadequate space to enable it to provide adequate medical care to its inmates;

    c.  Caused the Jail to have inadequate resources to enable it to provide adequate medical care to its inmates;

    d.  Caused the Jail to have inadequate training and supervision of its employees, staff and agents, including medical personnel, resulting in the inadequate delivery of medical care.

50.

Defendant Millsap was also responsible for the training and supervision of Jail employees, staff, and agents, including medical personnel.

51.

Defendant Millsap failed to adequately train or supervise Jail employees, staff, and agents, including medical employees.

14

52.

At the times relevant to this Complaint, Defendant Millsap knew that inmates at the Jail were not receiving adequate medical care for serious medical needs and failed to take reasonable steps to address the problem.

53.

At the times relevant to this Complaint, Defendant Millsap knew that the Jail would not be able to provide inmates with adequate medical care for serious medical needs should the need arise, such as emerging cardiac conditions, and failed to take reasonable steps to address the problem.

54.

Defendant Millsap, through his employees and agents, also had actual knowledge of Mr. Duncan's condition, specifically that he was experiencing chest pain with increasing frequency and severity, shortness of breath, numbness in his arm, and other symptoms, and that he was experiencing symptoms of a life-threatening cardiac condition that would lead to serious injury such as heart attack, heart damage, and shortened lifespan and quality of life if left untreated. Despite having this knowledge and knowing the risk of failing to provide proper medical care, such as cardiac intervention and treatment, Defendant Millsap failed to respond reasonably to address Mr. Duncan's needs.

55.

Defendant Millsap knowingly permitted the policy, custom, and practice of understaffing to persist throughout the Jail.

15

56.

Defendant Millsap knowingly permitted the policy, custom, and practice of denying inmates access to medical care at the Jail to persist.

57.

Defendant Millsap knowingly permitted to persist the policy, custom, and practice of failing to respond to serious and/or emergency medical needs, such as emerging cardiac conditions, in a timely and adequate manner.

58.

A reasonable person in Defendant Millsap's position would know that his failure to provide or cause to be provided medical care to Mr. Duncan, and his failure to train and supervise reflected deliberate indifference to serious medical needs.

59.

In addition to liability through his own actions and omissions, Defendant Millsap is also liable under the doctrine of *Respondeat Superior* for the acts and omissions of his officials and employees, as well as for the enforcement of his policies, practices, and customs that have violated Mr. Duncan's rights.

60.

Defendant Millsap's actions exhibited deliberate indifference to the safety and well-being of Mr. Duncan and subjected him to the unnecessary and wanton infliction of pain, which constituted cruel and unusual punishment.

## C. CorrectHealth Bartow LLC

61.

CorrectHealth Bartow LLC ("CorrectHealth") is a domestic limited liability company formed under the laws of the State of Georgia. CorrectHealth's principal office is located at 1720 Windward Concourse, Ste 300, Alpharetta, GA 30005, and it may be served upon its registered agent, CT Corporation System, 106 Colony Park Drive Ste 800-B, Cumming GA, 30040-2794 in Forsyth County. Defendant CorrectHealth is subject to the jurisdiction of this Court, and venue is proper.

62.

CorrectHealth, as authorized pursuant to a contract with the Bartow County, Sheriff Millsap, and/or BCSO, administers medical care for Bartow County Jail inmates.

63.

CorrectHealth contracted with Bartow County, Sheriff Millsap, and/or BCSO to provide administrative services, medical treatment including nursing and physician care, medical records management, pharmacy supply and services management, and other related services at the Jail.

64.

At all times relevant to this Complaint, Defendant CorrectHealth was responsible for the administration, supervision, and delivery of health and medical services to inmates such as Mr. Duncan at the Jail.

17

65.

The medical physicians, nurses and staff rendering services to Mr. Duncan at the Jail were employees/agents of Defendant CorrectHealth acting in the course and scope of their employment/agency.

66.

Defendant CorrectHealth was responsible for, and knowingly promulgated, enforced, and allowed to persist, policies and procedures of the Jail that, among other things:

a.  Caused too few qualified medical personnel to be hired at the Jail;

b.  Caused the Jail to have inadequate space to enable it to provide adequate medical care to its inmates;

c.  Caused the Jail to have inadequate resources to enable it to provide adequate medical care to is inmates;

d.  Caused the Jail to have inadequate training and supervision of its medical personnel, resulting in the inadequate delivery of medical care.

67.

Defendant CorrectHealth was also responsible for the training and supervision of Jail medical personnel.  Defendant CorrectHealth, through its employees and agents knows that its failure to train and supervise reflected deliberate indifference to serious medical needs.

68.

In addition to direct liability, Defendant CorrectHealth is also liable under the doctrine of *Respondeat Superior* for the acts and omissions of its officials, employees, and agents, which occurred in the ordinary course of their employment/agency with Defendant CorrectHealth.

69.

Defendant CorrectHealth, through its employees and agents, also had actual knowledge of Mr. Duncan's condition, specifically that he was experiencing chest pain with increasing frequency and severity, shortness of breath, numbness in his arm, and other symptoms, and that he was experiencing symptoms of a life-threatening cardiac condition that would lead to serious injury such as heart attack, heart damage, and shortened lifespan and quality of life if left untreated. Despite having this knowledge and knowing the risk of failing to provide proper medical care, such as cardiac intervention and treatment, CorrectHealth failed to respond reasonably to address Mr. Duncan's needs.

70.

Defendant CorrectHealth's actions exhibited deliberate indifference to the safety and well-being of Mr. Duncan and subjected him to the unnecessary and wanton infliction of severe pain, which constituted cruel and unusual punishment.

### D. **Phillip Nowlin**

71.

Defendant Phillip Nowlin (hereinafter "Defendant Nowlin") is a licensed Medical Doctor who, during the relevant time period, was an employee and/or agent of Bartow County, Sheriff

Clark Millsap, and/or Correcthealth Bartow, LLC and was acting in the course and scope of his

employement and/or agency of Defendants Bartow County, Sheriff Clark Millsap, BCSO, and/or

Correcthealth Bartow, LLC. Defendant Nowlin had a doctor-patient relationship with Mr. Duncan

and provided care and treatment to him during the relevant time period at Bartow County Jail.

72.

Defendant Nowlin is a resident of Bartow County and is subject to the jurisdiction of this

Court. He may be served with process at Bartow County Sheriff's Office located at 104 Zena Dr,

Cartersville, GA 30121 or anywhere else he may be found.

73.

Defendant Nowlin is subject to the jurisdiction of this Court and venue is proper.

74.

At all times relevant hereto, Defendant Nowlin is a physician licensed to practice medicine

in Georgia.

75.

At all relevant times, Defendant Nowlin acted under color of state law and pursuant to a

contract with the Jail. Defendant Nowlin was an employee and/or agent and/or ostensible agent of

Bartow County, Sheriff Clark Millsap, BCSO, and/or Correcthealth Bartow, LLC.

76.

At all relevant times, Defendant Nowlin acted under color of state law and pursuant to a

contract with the Jail. Defendant Nowlin is being sued for damages in both his individual capacity

and official capacities.

77.

At all times relevant to this Complaint, Defendant Nowlin was responsible for the administration, supervision, and delivery of health and medical services at the Jail.

78.

Defendant Nowlin was responsible for, and knowingly promulgated, enforced, and allowed to persist, policies and procedures of the Jail that, among other things:

a. Caused too few qualified medical personnel to be hired at the Jail;

b. Caused the Jail to have inadequate space to enable it to provide adequate medical care to its inmates;

c. Caused the Jail to have inadequate resources to enable it to provide adequate medical care to is inmates;

d. Caused the Jail to have inadequate training and supervision of its medical personnel, resulting in the inadequate delivery of medical care.

79.

Defendant Nowlin was also responsible for the training and supervision of medical personnel at the Jail.

80.

Defendant Nowlin knew that his failure to train and supervise reflected deliberate indifference to serious medical needs.

81.

21

Defendant Nowlin personally examined Mr. Duncan under conditions in which it would be obvious Mr. Duncan had serious medical needs and did not respond reasonably to the risk.

82.

Defendant Nowlin further failed to oversee and supervise the other healthcare practitioners who were supposed to be providing medical care to Mr. Duncan.

83.

Defendant Nowlin was aware that Mr. Duncan was experiencing chest pain with increasing frequency and severity, shortness of breath, numbness in his arm, and other symptoms. He had actual knowledge that Mr. Duncan was experiencing symptoms of a life-threatening cardiac condition that would lead to serious injury such as heart attack, heart damage, and shortened lifespan and quality of life if left untreated. Despite having this knowledge and knowing the risk of failing to provide proper medical care, such as cardiac intervention and treatment, Defendant Nowlin failed to provide the proper medical care. Defendant Nowlin failed to respond reasonably to address Mr. Duncan's needs.

84.

Defendant Nowlin's actions exhibited deliberate indifference to the safety and well-being of Mr. Duncan and subjected him to the unnecessary and wanton infliction of severe pain, which constituted cruel and unusual punishment.

### E. **Tonya Joseph**

85.

Defendant Tonya Joseph (hereinafter "Defendant Joseph") is a Health Services Administrator at Bartow County Jail who, during the relevant time period, was an employee and/or agent of Bartow County, Sheriff Clark Millsap, and/or Correcthealth Bartow, LLC and was acting in the course and scope of her employement and/or agency of Defendants Bartow County, Sheriff Clark Millsap, BCSO, and/or Correcthealth Bartow, LLC. Defendant Hall had a nurse-patient relationship with Mr. Duncan and provided/directed the provision of care and treatment to him during the relevant time period at Bartow County Jail.

86.

Defendant Joseph is a resident of Bartow County and is subject to the jurisdiction of this Court. She may be served with process at Bartow County Sheriff's Office located at 104 Zena Dr, Cartersville, GA 30121 or anywhere else she may be found.

87.

Defendant Joseph is subject to the jurisdiction of this Court, and venue is proper.

88.

At all times relevant to this Complaint, Defendant Joseph was responsible for the administration, supervision, and delivery of health and medical services at the Jail.

89.

Defendant Joseph was responsible for, and knowingly promulgated, enforced, and allowed to persist, policies and procedures of the Jail that, among other things:

a.  Caused too few qualified medical personnel to be hired at the Jail;

b.  Caused the Jail to have inadequate space to enable it to provide adequate medical care to its inmates;

c.  Caused the Jail to have inadequate resources to enable it to provide adequate medical care to is inmates;

d.  Caused the Jail to have inadequate training and supervision of its medical personnel, resulting in the inadequate delivery of medical care.

90.

At all relevant times, Defendant Joseph acted under color of state law and pursuant to a contract with the Jail. Defendant Joseph is being sued for damages in both her individual and official capacities.

91.

Defendant Joseph personally examined Mr. Duncan under conditions in which it would be obvious to a medical professional that Mr. Duncan had serious medical needs and did not respond reasonably to the risk.

92.

Defendant Joseph was aware that Mr. Duncan was experiencing chest pain with increasing frequency and severity, shortness of breath, numbness in his arm, and other symptoms. She had actual knowledge that Mr. Duncan was experiencing symptoms of a life-threatening cardiac condition that would lead to serious injury such as heart attack, heart damage, and shortened lifespan and quality of life if left untreated. Despite having this knowledge and knowing the risk of failing to provide proper medical care, such as cardiac intervention and treatment, Defendant

24

Joseph failed to provide the proper medical care. Defendant Joseph failed to respond reasonably to address Mr. Duncan's needs.

93.

Defendant Joseph's actions exhibited deliberate indifference to the safety and well-being of Mr. Duncan and subjected him to the unnecessary and wanton infliction of severe pain, which constituted cruel and unusual punishment.

**F. Madison Bankston**

94.

Defendant Madison Bankston (hereinafter "Defendant Bankston") is a Licensed Practical Nurse who, during the relevant time period, was an employee and/or agent of Bartow County, Sheriff Clark Millsap, and/or Correcthealth Bartow, LLC and was acting in the course and scope of her employement and/or agency of Defendants Bartow County, Sheriff Clark Millsap, BSCO, and/or Correcthealth Bartow, LLC. Defendant Madison Bankston had a nurse-patient relationship with Mr. Duncan and provided care and treatment to him during the relevant time period at Bartow County Jail.

95.

Defendant Madison Bankston is a resident of Bartow County and is subject to the jurisdiction of this Court. She may be served with process at Bartow County Sheriff's Office located at 104 Zena Dr, Cartersville, GA 30121 or anywhere else she may be found.

96.

Defendant Bankston is subject to the jurisdiction of this Court and venue is proper.

25

97.

At all relevant times, Defendant Bankston acted under color of state law and pursuant to a contract with the Jail. Defendant Bankston is being sued for damages in both her individual and official capacities.

98.

Defendant Bankston personally examined Mr. Duncan under conditions in which it would be obvious to a medical professional that Mr. Duncan had serious medical needs and did not respond reasonably to the risk.

99.

Defendant Bankston was aware that Mr. Duncan was experiencing chest pain with increasing frequency and severity, shortness of breath, numbness in his arm, and other symptoms. She had actual knowledge that Mr. Duncan was experiencing symptoms of a life-threatening cardiac condition that would lead to serious injury such as heart attack, heart damage, and shortened lifespan and quality of life if left untreated. Despite having this knowledge and knowing the risk of failing to provide proper medical care, such as cardiac intervention and treatment, Defendant Bankston failed to provide the proper medical care. Defendant Bankston failed to respond reasonably to address Mr. Duncan's needs.

100.

Defendant Bankston's actions exhibited deliberate indifference to the safety and well-being of Mr. Duncan and subjected him to the unnecessary and wanton infliction of severe pain, which constituted cruel and unusual punishment.

### G. Charlotte Hall

101.

Defendant Charlotte Hall (hereinafter "Defendant Hall") is a Nuse Practitioner who, during the relevant time period, was an employee and/or agent of Bartow County, Sheriff Clark Millsap, BCSO, and/or Correcthealth Bartow, LLC and was acting in the course and scope of her employment and/or agency of Defendants Bartow County, Sheriff Clark Millsap, BCSO, and/or Correcthealth Bartow, LLC. Defendant Hall had a nurse-patient relationship with Mr. Duncan and provided care and treatment to him during the relevant time period at Bartow County Jail.

102.

Defendant Hall is a resident of Bartow County and is subject to the jurisdiction of this Court. She may be served with process at Bartow County Sheriff's Office located at 104 Zena Dr, Cartersville, GA 30121 or anywhere else she may be found.

103.

Defendant Hall is subject to the jurisdiction of this Court, and venue is proper.

104.

At all relevant times, Defendant Hall acted under color of state law and pursuant to a contract with the Jail. Defendant Hall is being sued for damages in both her individual and official capacities.

105.

Defendant Hall personally examined Mr. Duncan under conditions in which it would be obvious to a medical professional that Mr. Duncan had serious medical needs and did not respond reasonably to the risk.

106.

Defendant Hall was aware that Mr. Duncan was experiencing chest pain with increasing frequency and severity, shortness of breath, numbness in his arm, and other symptoms. She had actual knowledge that Mr. Duncan was experiencing symptoms of a life-threatening cardiac condition that would lead to serious injury such as heart attack, heart damage, and shortened lifespan and quality of life if left untreated. Despite having this knowledge and knowing the risk of failing to provide proper medical care, such as cardiac intervention and treatment, Defendant Hall failed to provide the proper medical care. Defendant Hall failed to respond reasonably to address Mr. Duncan's needs.

107.

Defendant Hall's actions exhibited deliberate indifference to the safety and well-being of Mr. Duncan and subjected him to the unnecessary and wanton infliction of severe pain, which constituted cruel and unusual punishment.

**H. Christina Catron**

108.

Defendant Christina Catron (hereinafter "Defendant Catron") is a Licensed Practical Nurse who, during the relevant time period, was an employee and/or agent of Bartow County, Sheriff

Clark Millsap, and/or Correcthealth Bartow, LLC and was acting in the course and scope of her

employement and/or agency of Defendants Bartow County, Sheriff Clark Millsap, BCSO, and/or

Correcthealth Bartow, LLC.  Defendant Catron had a nurse-patient relationship with Mr. Duncan

and provided care and treatment to him during the relevant time period at Bartow County Jail.

109.

Defendant Catron is a resident of Bartow County and is subject to the jurisdiction of this

Court.  She may be served with process at Bartow County Sheriff's Office located at 104 Zena Dr,

Cartersville, GA 30121 or anywhere else she may be found.

110.

Defendant Catron is subject to the jurisdiction of this Court and venue is proper.

111.

At all relevant times, Defendant Catron acted under color of state law and pursuant to a

contract with the Jail. Defendant Catron is being sued for damages in both her individual and

official capacities.

112.

Defendant Catron personally examined Mr. Duncan under conditions in which it

would be obvious to a medical professional that Mr. Duncan had serious medical needs and did

not respond reasonably to the risk.

113.

Defendant Catron was aware that Mr. Duncan was experiencing chest pain with increasing

frequency and severity, shortness of breath, numbness in his arm, and other symptoms.  She had

29

actual knowledge that Mr. Duncan was experiencing symptoms of a life-threatening cardiac condition that would lead to serious injury such as heart attack, heart damage, and shortened lifespan and quality of life if left untreated. Despite having this knowledge and knowing the risk of failing to provide proper medical care, such as cardiac intervention and treatment, Defendant Catron failed to provide the proper medical care. Defendant Catron failed to respond reasonably to address Mr. Duncan's needs.

114.

Defendant Catron's actions exhibited deliberate indifference to the safety and well-being of Mr. Duncan and subjected him to the unnecessary and wanton infliction of severe pain, which constituted cruel and unusual punishment.

### I. Rebecca Hamilton

115.

Defendant Rebecca Hamilton (hereinafter "Defendant Hamilton") is a Licensed Practical Nurse who, during the relevant time period, was an employee and/or agent of Bartow County, Sheriff Clark Millsap, and/or Correcthealth Bartow, LLC and was acting in the course and scope of her employement and/or agency of Defendants Bartow County, Sheriff Clark Millsap, BCSO, and/or Correcthealth Bartow, LLC. Defendant Hamilton had a nurse-patient relationship with Mr. Duncan and provided care and treatment to him during the relevant time period at Bartow County Jail.

116.

Defendant Hamilton is a resident of Bartow County and is subject to the jurisdiction of this Court. She may be served with process at Bartow County Sheriff's Office located at 104 Zena Dr, Cartersville, GA 30121 or anywhere else she may be found.

117.

Defendant Hamilton is subject to the jurisdiction of this Court and venue is proper.

118.

At all relevant times, Defendant Hamilton acted under color of state law and pursuant to a contract with the Jail. Defendant Hamilton is being sued for damages in both her individual and official capacities.

119.

Defendant Hamilton personally examined Mr. Duncan under conditions in which it would be obvious to a medical professional that Mr. Duncan had serious medical needs and did not respond reasonably to the risk.

120.

Defendant Hamilton was aware that Mr. Duncan was experiencing chest pain with increasing frequency and severity, shortness of breath, numbness in his arm, and other symptoms. She had actual knowledge that Mr. Duncan was experiencing symptoms of a life-threatening cardiac condition that would lead to serious injury such as heart attack, heart damage, and shortened lifespan and quality of life if left untreated. Despite having this knowledge and knowing the risk of failing to provide proper medical care, such as cardiac intervention and treatment,

Defendant Hamilton failed to provide the proper medical care. Defendant Hamilton failed to respond reasonably to address Mr. Duncan's needs.

121.

Defendant Hamilton's actions exhibited deliberate indifference to the safety and well-being of Mr. Duncan and subjected him to the unnecessary and wanton infliction of severe pain, which constituted cruel and unusual punishment.

### J. Sheila Williams

122.

Defendant Sheila Williams (hereinafter "Defendant Williams") is a Licensed Practical Nurse who, during the relevant time period, was an employee and/or agent of Bartow County, Sheriff Clark Millsap, and/or Correcthealth Bartow, LLC and was acting in the course and scope of her employement and/or agency of Defendants Bartow County, Sheriff Clark Millsap, BCSO, and/or Correcthealth Bartow, LLC. Defendant Williams had a nurse-patient relationship with Mr. Duncan and provided care and treatment to him during the relevant time period at Bartow County Jail.

123.

Defendant Williams is a resident of Bartow County and is subject to the jurisdiction of this Court. She may be served with process at Bartow County Sheriff's Office located at 104 Zena Dr, Cartersville, GA 30121 or anywhere else she may be found.

124.

Defendant Williams is subject to the jurisdiction of this Court and venue is proper.

32

125.

At all relevant times, Defendant Williams acted under color of state law and pursuant to a contract with the Jail. Defendant Williams is being sued for damages in both her individual and official capacities.

126.

Defendant Williams personally examined Mr. Duncan under conditions in which it would be obvious to a medical professional that Mr. Duncan had serious medical needs and did not respond reasonably to the risk.

127.

Defendant Williams was aware that Mr. Duncan was experiencing chest pain with increasing frequency and severity, shortness of breath, numbness in his arm, and other symptoms. She had actual knowledge that Mr. Duncan was experiencing symptoms of a life-threatening cardiac condition that would lead to serious injury such as heart attack, heart damage, and shortened lifespan and quality of life if left untreated. Despite having this knowledge and knowing the risk of failing to provide proper medical care, such as cardiac intervention and treatment, Defendant Williams failed to provide the proper medical care. Defendant Williams failed to respond reasonably to address Mr. Duncan's needs.

128.

Defendant Williams's actions exhibited deliberate indifference to the safety and well-being of Mr. Duncan and subjected him to the unnecessary and wanton infliction of severe pain, which constituted cruel and unusual punishment.

## K. Patricia Lee

129.

Defendant Patricia Lee (hereinafter "Defendant Lee") is a Licensed Practical Nurse who, during the relevant time period, was an employee and/or agent of Bartow County, Sheriff Clark Millsap, BCSO, and/or Correcthealth Bartow, LLC and was acting in the course and scope of her employement and/or agency of Defendants Bartow County, Sheriff Clark Millsap, BCSO, and/or Correcthealth Bartow, LLC. Defendant Lee had a nurse-patient relationship with Mr. Duncan and provided care and treatment to him during the relevant time period at Bartow County Jail.

130.

Defendant Lee is a resident of Bartow County and is subject to the jurisdiction of this Court. She may be served with process at Bartow County Sheriff's Office located at 104 Zena Dr, Cartersville, GA 30121 or anywhere else she may be found.

131.

Defendant Lee is subject to the jurisdiction of this Court and venue is proper.

132.

At all relevant times, Defendant Lee acted under color of state law and pursuant to a contract with the Jail. Defendant Lee is being sued for damages in both her individual and official capacities.

133.

Defendant Lee personally examined Mr. Duncan under conditions in which it would be obvious to a medical professional that Mr. Duncan had serious medical needs and did not respond reasonably to the risk.

134.

Defendant Lee was aware that Mr. Duncan was experiencing chest pain with increasing frequency and severity, shortness of breath, numbness in his arm, and other symptoms. She had actual knowledge that Mr. Duncan was experiencing symptoms of a life-threatening cardiac condition that would lead to serious injury such as heart attack, heart damage, and shortened lifespan and quality of life if left untreated. Despite having this knowledge and knowing the risk of failing to provide proper medical care, such as cardiac intervention and treatment, Defendant Lee failed to provide the proper medical care. Defendant Lee failed to respond reasonably to address Mr. Duncan's needs.

135.

Defendant Lee's actions exhibited deliberate indifference to the safety and well-being of Mr. Duncan and subjected him to the unnecessary and wanton infliction of severe pain, which constituted cruel and unusual punishment.

**L. Kelly Kurtz**

136.

Defendant Kelly Kurtz (hereinafter "Defendant Kurtz") is a Nuse Practitioner who, during the relevant time period, was an employee and/or agent of Bartow County, Sheriff Clark Millsap,

BCSO, and/or Correcthealth Bartow, LLC and was acting in the course and scope of her employement and/or agency of Defendants Bartow County, Sheriff Clark Millsap, BCSO, and/or Correcthealth Bartow, LLC. Defendant Kurtz had a nurse-patient relationship with Mr. Duncan and provided care and treatment to him during the relevant time period at Bartow County Jail.

137.

Defendant Kurtz is a resident of Bartow County and is subject to the jurisdiction of this Court. She may be served with process at Bartow County Sheriff's Office located at 104 Zena Dr, Cartersville, GA 30121 or anywhere else she may be found.

138.

Defendant Kurtz is subject to the jurisdiction of this Court and venue is proper.

139.

At all relevant times, Defendant Kurtz acted under color of state law and pursuant to a contract with the Jail. Defendant Kurtz is being sued for damages in both her individual and official capacities.

140.

Defendant Kurtz personally examined Mr. Duncan under conditions in which it would be obvious to a medical professional that Mr. Duncan had serious medical needs and did not respond reasonably to the risk.

141.

Defendant Kurtz was aware that Mr. Duncan was experiencing chest pain with increasing frequency and severity, shortness of breath, numbness in his arm, and other symptoms. She had

actual knowledge that Mr. Duncan was experiencing symptoms of a life-threatening cardiac condition that would lead to serious injury such as heart attack, heart damage, and shortened lifespan and quality of life if left untreated. Despite having this knowledge and knowing the risk of failing to provide proper medical care, such as cardiac intervention and treatment, Defendant Kurtz failed to provide the proper medical care. Defendant Kurtz failed to respond reasonably to address Mr. Duncan's needs.

142.

Defendant Kurtz's actions exhibited deliberate indifference to the safety and well-being of Mr. Duncan and subjected him to the unnecessary and wanton infliction of severe pain, which constituted cruel and unusual punishment.

### M. Flesha Myricks

143.

Defendant Flesha Myricks (hereinafter "Defendant Myricks") is a Licensed Practical Nurse who, during the relevant time period, was an employee and/or agent of Bartow County, Sheriff Clark Millsap, BCSO, and/or Correcthealth Bartow, LLC and was acting in the course and scope of her employement and/or agency of Defendants Bartow County, Sheriff Clark Millsap, BCSO, and/or Correcthealth Bartow, LLC. Defendant Myricks had a nurse-patient relationship with Mr. Duncan and provided care and treatment to him during the relevant time period at Bartow County Jail.

144.

Defendant Myricks is a resident of Bartow County and is subject to the jurisdiction of this Court. She may be served with process at Bartow County Sheriff's Office located at 104 Zena Dr, Cartersville, GA 30121 or anywhere else she may be found.

145.

Defendant Myricks is subject to the jurisdiction of this Court and venue is proper.

146.

At all relevant times, Defendant Myricks acted under color of state law and pursuant to a contract with the Jail. Defendant Myricks is being sued for damages in both her individual and official capacities.

147.

Defendant Myricks personally examined Mr. Duncan under conditions in which it would be obvious to a medical professional that Mr. Duncan had serious medical needs and did not respond reasonably to the risk.

148.

Defendant Myricks was aware that Mr. Duncan was experiencing chest pain with increasing frequency and severity, shortness of breath, numbness in his arm, and other symptoms. She had actual knowledge that Mr. Duncan was experiencing symptoms of a life-threatening cardiac condition that would lead to serious injury such as heart attack, heart damage, and shortened lifespan and quality of life if left untreated. Despite having this knowledge and knowing the risk of failing to provide proper medical care, such as cardiac intervention and treatment,

Defendant Myricks failed to provide the proper medical care. Defendant Myricks failed to respond reasonably to address Mr. Duncan's needs.

149.

Defendant Myricks's actions exhibited deliberate indifference to the safety and well-being of Mr. Duncan and subjected him to the unnecessary and wanton infliction of severe pain, which constituted cruel and unusual punishment.

**N. Jennifer Pulido**

150.

Defendant Jennifer Pulido (hereinafter "Defendant Pulido") is a Licensed Practical Nurse who, during the relevant time period, was an employee and/or agent of Bartow County, Sheriff Clark Millsap, BCSO, and/or Correcthealth Bartow, LLC and was acting in the course and scope of her employement and/or agency of Defendants Bartow County, Sheriff Clark Millsap, BCSO, and/or Correcthealth Bartow, LLC. Defendant Pulido had a nurse-patient relationship with Mr. Duncan and provided care and treatment to him during the relevant time period at Bartow County Jail.

151.

Defendant Pulido is a resident of Bartow County and is subject to the jurisdiction of this Court. She may be served with process at Bartow County Sheriff's Office located at 104 Zena Dr, Cartersville, GA 30121 or anywhere else she may be found.

152.

Defendant Pulido is subject to the jurisdiction of this Court and venue is proper.

153.

At all relevant times, Defendant Pulido acted under color of state law and pursuant to a contract with the Jail. Defendant Pulido is being sued for damages in both her individual and official capacities.

154.

Defendant Pulido personally examined Mr. Duncan under conditions in which it would be obvious to a medical professional that Mr. Duncan had serious medical needs and did not respond reasonably to the risk.

155.

Defendant Pulido was aware that Mr. Duncan was experiencing chest pain with increasing frequency and severity, shortness of breath, numbness in his arm, and other symptoms. She had actual knowledge that Mr. Duncan was experiencing symptoms of a life-threatening cardiac condition that would lead to serious injury such as heart attack, heart damage, and shortened lifespan and quality of life if left untreated. Despite having this knowledge and knowing the risk of failing to provide proper medical care, such as cardiac intervention and treatment, Defendant Pulido failed to provide the proper medical care. Defendant Pulido failed to respond reasonably to address Mr. Duncan's needs.

156.

Defendant Pulido's actions exhibited deliberate indifference to the safety and well-being of Mr. Duncan and subjected him to the unnecessary and wanton infliction of severe pain, which constituted cruel and unusual punishment.

40

## O. **Chantal Dessources**

157.

Defendant Chantal Dessources (hereinafter "Defendant Dessources") is a Licensed Practical Nurse who, during the relevant time period, was an employee and/or agent of Bartow County, Sheriff Clark Millsap, BCSO, and/or Correcthealth Bartow, LLC and was acting in the course and scope of her employement and/or agency of Defendants Bartow County, Sheriff Clark Millsap, BCSO, and/or Correcthealth Bartow, LLC. Defendant Dessources had a nurse-patient relationship with Mr. Duncan and provided care and treatment to him during the relevant time period at Bartow County Jail.

158.

Defendant Dessources is a resident of Bartow County and is subject to the jurisdiction of this Court. She may be served with process at Bartow County Sheriff's Office located at 104 Zena Dr, Cartersville, GA 30121 or anywhere else she may be found.

159.

Defendant Dessources is subject to the jurisdiction of this Court, and venue is proper.

160.

At all relevant times, Defendant Dessources acted under color of state law and pursuant to a contract with the Jail. Defendant Dessources is being sued for damages in both her individual and official capacities.

41

161.

Defendant Dessources personally examined Mr. Duncan under conditions in which it would be obvious to a medical professional that Mr. Duncan had serious medical needs and did not respond reasonably to the risk.

162.

Defendant Dessources was aware that Mr. Duncan was experiencing chest pain with increasing frequency and severity, shortness of breath, numbness in his arm, and other symptoms. She had actual knowledge that Mr. Duncan was experiencing symptoms of a life-threatening cardiac condition that would lead to serious injury such as heart attack, heart damage, and shortened lifespan and quality of life if left untreated. Despite having this knowledge and knowing the risk of failing to provide proper medical care, such as cardiac intervention and treatment, Defendant Dessources failed to provide the proper medical care. Defendant Dessources failed to respond reasonably to address Mr. Duncan's needs.

163.

Defendant Dessources's actions exhibited deliberate indifference to the safety and well-being of Mr. Duncan and subjected him to the unnecessary and wanton infliction of severe pain, which constituted cruel and unusual punishment.

**P. Callie Evans**

164.

Defendant Callie Evans (hereinafter "Defendant Evans") is a Licensed Practical Nurse who, during the relevant time period, was an employee and/or agent of Bartow County, Sheriff

Clark Millsap, BCSO, and/or Correcthealth Bartow, LLC and was acting in the course and scope of her employement and/or agency of Defendants Bartow County, Sheriff Clark Millsap, BCSO, and/or Correcthealth Bartow, LLC. Defendant Evans had a nurse-patient relationship with Mr. Duncan and provided care and treatment to him during the relevant time period at Bartow County Jail.

165.

Defendant Evans is a resident of Bartow County and is subject to the jurisdiction of this Court. She may be served with process at Bartow County Sheriff's Office located at 104 Zena Dr, Cartersville, GA 30121 or anywhere else she may be found.

166.

Defendant Evans is subject to the jurisdiction of this Court and venue is proper.

167.

At all relevant times, Defendant Evans acted under color of state law and pursuant to a contract with the Jail. Defendant Evans is being sued for damages in both her individual and official capacities.

168.

Defendant Evans personally examined Mr. Duncan under conditions in which it would be obvious to a medical professional that Mr. Duncan had serious medical needs and did not respond reasonably to the risk.

169.

Defendant Evans was aware that Mr. Duncan was experiencing chest pain with increasing frequency and severity, shortness of breath, numbness in his arm, and other symptoms. She had actual knowledge that Mr. Duncan was experiencing symptoms of a life-threatening cardiac condition that would lead to serious injury such as heart attack, heart damage, and shortened lifespan and quality of life if left untreated. Despite having this knowledge and knowing the risk of failing to provide proper medical care, such as cardiac intervention and treatment, Defendant Evans failed to provide the proper medical care. Defendant Evans failed to respond reasonably to address Mr. Duncan's needs.

170.

Defendant Evans's actions exhibited deliberate indifference to the safety and well-being of Mr. Duncan and subjected him to the unnecessary and wanton infliction of severe pain, which constituted cruel and unusual punishment.

### Q. **First Name Unknown Shirley**

171.

Defendant Nurse Shirley (hereinafter "Defendant Shirley") is a healthcare professional who, during the relevant time period, was an employee and/or agent of Bartow County, Sheriff Clark Millsap, BCSO, and/or Correcthealth Bartow, LLC and was acting in the course and scope of her employement and/or agency of Defendants Bartow County, Sheriff Clark Millsap, BCSO, and/or Correcthealth Bartow, LLC. Defendant Shirley had a nurse-patient relationship with Mr. Duncan and provided care and treatment to him during the relevant time period at Bartow County Jail.

44

172.

Defendant Shirley's full name is not disclosed in the materials available to Plaintiff at this time. Once her full name is known, the Complaint will be amended to reflect her full name. Mr. Duncan's relevant medical records reflect that "Nurse Shirley" communicated with him many times about the symptoms he was experiencing, yet Nurse Shirley failed to treat him for his emerging cardiac condition.

173.

Defendant Shirley is a resident of Bartow County and is subject to the jurisdiction of this Court. She may be served with process at Bartow County Sheriff's Office located at 104 Zena Dr, Cartersville, GA 30121 or anywhere else she may be found.

174.

Defendant Shirley is subject to the jurisdiction of this Court and venue is proper.

175.

At all relevant times, Defendant Shirley acted under color of state law and pursuant to a contract with the Jail. Defendant Shirley is being sued for damages in both her individual and official capacities.

176.

Defendant Shirley personally examined Mr. Duncan under conditions in which it would be obvious to a medical professional that Mr. Duncan had serious medical needs and did not respond reasonably to the risk.

177.

Defendant Shirley was aware that Mr. Duncan was experiencing chest pain with increasing frequency and severity, shortness of breath, numbness in his arm, and other symptoms. She had actual knowledge that Mr. Duncan was experiencing symptoms of a life-threatening cardiac condition that would lead to serious injury such as heart attack, heart damage, and shortened lifespan and quality of life if left untreated. Despite having this knowledge and knowing the risk of failing to provide proper medical care, such as cardiac intervention and treatment, Defendant Shirley failed to provide the proper medical care. Defendant Shirley failed to respond reasonably to address Mr. Duncan's needs.

178.

Defendant Shirley's actions exhibited deliberate indifference to the safety and well-being of Mr. Duncan and subjected him to the unnecessary and wanton infliction of severe pain, which constituted cruel and unusual punishment.

179.

All Defendants are legally responsible, in whole or in part, for the operation and conditions of the Jail, and for the health and safety of persons incarcerated in the Jail.

180.

At all relevant times, all Defendants or their predecessors in office have acted or failed to act, as alleged herein, under color of state law.

181.

Through the acts and omissions alleged herein, Defendants have exhibited deliberate indifference to the health and safety of Mr. Duncan, in violation of his rights, privileges, or immunities as secured or protected by the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

## CAUSES OF ACTION

### COUNT I
### (ALL DEFENDANTS)
### 42 U.S.C. § 1983: VIOLATION OF EIGHTH AND FOURTEENTH AMENDMENTS

182.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint above as if fully restated.

183.

Defendants, acting under color of state law, were responsible for diagnosing, treating, caring for, and maintaining custody of Mr. Duncan.

184.

While in the custody and care of Defendants, Mr. Duncan had serious, life-threatening medical needs that would have been obvious to any medical provider.

185.

Defendants had actual knowledge of Mr. Duncan serious medical needs.

186.

Defendants were deliberately indifferent to Mr. Duncan serious medical needs in at least the following ways:

   a.  Defendants denied Mr. Duncan access to a medical facility appropriate for his serious medical needs;

   b.  Defendants denied Mr. Duncan access to medical personnel qualified to treat his serious medical needs;

   c.  Defendants failed to inquire into the essential facts that were necessary to make a professional judgment about Mr. Duncan serious medical needs;

   d.  Defendants caused factors unrelated to inmates' medical needs to interfere with the exercise of medical judgment regarding Mr. Duncan serious medical needs; and

   e.  Defendants failed to diagnose Mr. Duncan as having an evolving cardiac problem;

   f.  Defendants failed to properly evaluate Mr. Duncan's changing condition;

   g.  Defendants failed to properly assess and evaluate Mr. Duncan as having a heart attack and/or being at increased risk of having a heart attack;

   h.  Defendants failed to promptly report signs and symptoms of an emerging cardiac condition to a cardiologist;

   i.  Defendants failed to promptly, but no later than September 1, 2022 when Mr. Duncan reported experiencing chest pain and shortness of breath, refer him to a cardiologist for cardiac workup to properly evaluate his emerging cardiac condition;

48

j.  Defendants failed to seek and/or obtain timely review of Mr. Duncan's signs and symptoms by a cardiologist;

k.  Defendants allowed Mr. Duncan's evolving cardiac condition to be untreated for weeks without proper intervention and treatment;

l.  Defendants failed to provide timely and proper cardiac intervention to Mr. Duncan;

m. Defendants failed to immediately procure a Life Vest for Mr. Duncan upon his return to Bartow County Jail from Cartersville Medical Center.

187.

Defendants' knowledge of Mr. Duncan's obvious, serious medical needs constitutes actual knowledge of an objectively cruel condition.

188.

Defendants were aware of Mr. Duncan's symptoms and that they indicated he was in cardiac distress, and further knew that the failure to provide proper cardiac treatment would result in him experiencing a heart attack and resulting heart damage.   Defendants failed to provide Mr. Duncan with appropriate care despite being aware of these risks.

189.

Defendants' failure to provide medical care for Mr. Duncan obvious, serious medical needs was an objectively unreasonable response to a known, substantial risk.

49

190.

Defendants' actions and inactions caused Mr. Duncan to be deprived of his right to adequate medical care secured by the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

191.

As a direct and proximate result of Defendants' violation of his rights, Mr. Duncan suffered medical expenses, physical injuries, pain and suffering, and mental and emotional distress.

192.

Accordingly, the Defendants' deliberate indifference to Mr. Duncan's serious medical needs constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.

193.

As a direct and proximate result of the Defendants' deliberate indifference to Mr. Duncan's serious medical needs, Mr. Duncan experienced conscious pain and suffering.

**COUNT II**
**(DEFENDANTS BARTOW COUNTY, MILLSAP, CORRECTHEALTH, NOWLIN AND JOSEPH) 42 U.S.C. § 1983: VIOLATION OF EIGHTH AND FOURTEENTH AMENDMENTS**

194.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint above as if fully restated.

195.

Defendants Bartow County, Millsap, CorrectHealth, Nowlin, and Joseph (collectively the "Count II Defendants"), acting under color of state law, were responsible for Mr. Duncan's care, and were obligated to provide or obtain adequate and effective medical treatment for him.

196.

The Count II Defendants have a duty to establish and operate in accordance with the rights guaranteed to citizens under the Constitution of the United States.

197.

The Count II Defendants have a duty to train its employees, staff, and agents and establish policies that protect the rights guaranteed to citizens under the Constitution of the United States.

198.

The Count II Defendants were involved in directing, procuring, and providing medical care for Mr. Duncan.

199.

The Count II Defendants were involved in promulgating and enforcing policies and procedures regarding the medical care that Mr. Duncan received.

200.

The Count II Defendants promulgated and enforced policies and procedures that caused the Jail to have grossly insufficient qualified staff, space, and resources to provide constitutionally adequate medical care to Jail inmates including Mr. Duncan.

201.

The Count II Defendants promulgated and enforced policies and procedures that caused more inmates to be transferred to the Jail than for whom the Jail could adequately care.

202.

The Count II Defendants had actual knowledge of the grossly inadequate medical care provided to inmates at the Jail and did not attempt to remedy the problem.

203.

The Count II Defendants were responsible for training and supervising medical staff involved in the medical care of Jail.

204.

The Count II Defendants knew that their subordinates were failing to provide adequate medical care to Mr. Duncan and did not attempt to remedy the problem.

205.

The Count II Defendants knew that reasonable people in their positions would know that their failure to train and supervise reflected deliberate indifference to serious medical needs.

206.

The Count II Defendants' response to their subordinates' failure to provide medical care for Mr. Duncan's obvious, serious medical needs was an objectively unreasonable response to a known, substantial risk.

207.

Accordingly, the Count II Defendants' deliberate indifference to Mr. Duncan's serious medical needs constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.

208.

Count II Defendants' failure to provide medical care for Mr. Duncan's obvious, serious medical needs was an objectively unreasonable response to a known, substantial risk.

209.

Count II Defendants' actions and inactions caused Mr. Duncan to be deprived of his right to adequate medical care secured by the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

210.

As a direct and proximate result of Count II Defendants' violation of his rights, Mr. Duncan suffered medical expenses, physical injuries, pain and suffering, and mental and emotional distress.

211.

Accordingly, the Count II Defendants' deliberate indifference to Mr. Duncan's serious medical needs constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.

212.

As a direct and proximate result of the Count II Defendants' deliberate indifference to Mr. Duncan's serious medical needs, Mr. Duncan experienced conscious pain and suffering.

## COUNT III
## (ALL DEFENDANTS)
## CLAIM UNDER GEORGIA LAW
## FOR INADEQUATE MEDICAL CARE UNDER O.C.G.A. § 42-5-2

213.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint above as if fully restated.

214.

Defendants' actions caused Mr. Duncan to be deprived of his rights under O.C.G.A. § 42-5-2 to adequate medical care.

215.

As a direct and proximate result of Defendants actions, Mr. Duncan has suffered medical expenses, physical injuries, pain and suffering, and mental and emotional distress.

216.

As a result of the Defendants' actions, Plaintiff is entitled to compensatory damages in an amount to be proven at trial for medical expenses, pain and suffering, and loss earnings.

217.

In causing Mr. Duncan's injuries, Defendants acted with callous and reckless indifference to his constitutional rights. Defendants' actions were malicious, wanton and willful. As a result, Plaintiff is entitled to punitive damages in an amount to be determined at trial.

### COUNT IV
### (DEFENDANTS BARTOW COUNTY AND MILLSAP)
### CLAIM UNDER GEORGIA LAW FOR BREACH OF DUTIES OF SHERIFF, PURSUANT TO O.C.GA. § 42-4-4

218.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint above as if fully restated.

219.

Defendant Millsap, by and through himself and his agents, owed particular duties to jail inmates as enumerated in O.C.G.A. § 42-4-4. One such duty was to provide inmates, such as Mr. Duncan, with medical aid.

220.

In his above-described actions and inactions, Defendants violated their duties as prescribed by O.C.G.A. § 42-4-4 by failing to provide Mr. Duncan with necessary medical aid.

221.

As a direct and proximate result of Defendants' violation of his rights and breach of the bond, Mr. Duncan suffered physical injuries, pain and suffering and mental and emotional distress.

222.

Defendants are liable to Mr. Duncan in an amount to be proven at trial.

## COUNT V
## (ALL DEFENDANTS)
## CLAIM UNDER GEORGIA LAW FOR MEDICAL MALPRACTICE
223.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint above as if fully restated.

224.

At all times relevant, the individual Defendants were employees/ agents of Bartow County, Defendant Millsap, BCSO, and/or CorrectHealth, acting in the course and scope of their employment/agency. As such, Defendants Bartow County, Defendant Millsap, BCSO, and CorrectHealth are liable for their negligence under the doctrine of *Respondeat* Superior.

225.

The injuries sustained by Mr. Duncan were a direct and proximate result of Defendants' negligent conduct, specifically their failure to appropriately assess, monitor, diagnose, respond to and manage Mr. Duncan's evolving cardiac problem. These Defendants were negligent in their care and treatment of Mr. Duncan. Defendants' negligence includes at least the following:

A. Failing to diagnose Mr. Duncan as having an evolving cardiac problem;

B. Failing to properly evaluate Mr. Duncan's changing condition;

C. Failing to properly assess and evaluate Mr. Duncan as having a heart attack and/or being at increased risk of having a heart attack;

D. Failing to promptly report signs and symptoms of an emerging cardiac condition to a cardiologist;

E. Failing to promptly, but no later than September 1, 2022 when Mr. Duncan reported experiencing chest pain and shortness of breath, refer him to a cardiologist for cardiac workup to properly evaluate his emerging cardiac condition;

F. Failing to seek and/or obtain timely review of Mr. Duncan's signs and symptoms by a cardiologist;

G. Allowing Mr. Duncan's evolving cardiac condition to be untreated for weeks without proper intervention and treatment;

H. Failing to provide timely and proper cardiac intervention to Mr. Duncan;

I. Failing to immediately procure a Life Vest for Mr. Duncan upon his return to Bartow County Jail from Cartersville Medical Center.

226.

The standard of care required Bartow County, Sheriff Millsap, and Correct Health and their nurses, nurses' aides, nurse practitioners, medical doctors and other staff and medical professionals involved in the care of Mr. Duncan to:

J. Diagnose Mr. Duncan as having an evolving cardiac problem;

K. Properly evaluate Mr. Duncan's changing condition;

L. Properly assess and evaluate Mr. Duncan as having a heart attack and/or being at increased risk of having a heart attack;

M. Promptly report signs and symptoms of an emerging cardiac condition to a cardiologist;

N. Promptly, but no later than September 1, 2022 when Mr. Duncan reported experiencing chest pain and shortness of breath, refer him to a cardiologist for cardiac workup to properly evaluate his emerging cardiac condition; and

O. Immediately procure a Life Vest for Mr. Duncan upon his return to Bartow County Jail from Cartersville Medical Center.

227.

The failure of Defendants to adhere to the standard of care as outlined above resulted in significant injuries and pain and suffering to Mr. Duncan.   As a direct result of Defendants' negligence, Mr. Duncan suffered a heart attack and subsequent heart damage requiring lifelong medical therapy and potentially a significant reduction in life expectancy and quality of life.

228.

Had Defendants adhered to the standard of care as outlined above, Mr. Duncan would not have experienced his heart attacks and would not have suffered the severe heart damage that he did.

229.

Defendants' Bartow County, Millsap, CorrectHealth, Nowlin, and Joseph were also negligent in their supervision of their nurses, nurses' aides, nurse practitioners, medical doctors and other staff and medical professionals involved in the care of Mr. Duncan's care (such as the other Defendants), with whom they had delegated aspects of their inmates' care.  Such negligence includes but is not limited to the assignment of patient management without immediate supervision of residents and staff lacking expertise to properly assess, diagnose, monitor and manager their inmates/patients' condition.  Mr. Duncan's injuries were proximately caused by both the active

and passive negligence of Defendants Bartow County, Millsap, CorrectHealth, Nowlin, and Joseph.

### 230.

The negligence of Defendants included the failure to promptly and accurately communicate their Mr. Duncan's clinical presentation to the appropriate decision makers.

### 231.

Pursuant to O.C.G.A. § 9-11-9.1, Plaintiff attaches as Exhibit 2 and incorporates by reference herein the affidavit of Emil A. Dameff, M.D., CCHP, a duly qualified physician competent to testify in this matter, alleging at least one act of negligence by each medical defendant, and thus fulfilling the requirements of O.C.G.A. § 9-11-9.1.

### 232.

Pursuant to O.C.G.A. § 9-11-9.1, Plaintiff further attaches as Exhibit 3 and incorporates by reference herein the affidavit of Joshua M Willis, MD, FACC, FSCAI, a duly qualified physician competent to testify in this matter, alleging at least one act of negligence by each medical defendant, and thus fulfilling the requirements of O.C.G.A. § 9-11-9.1.

### COUNT VI
### (DEFENDANTS BARTOW COUNTY, MILLSAP, AND CORRECTHEALTH)
### CLAIM UNDER GEORGIA LAW FOR NEGLIGENT CREDENTIALING

### 233.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint above as if fully restated.

### 234.

59

Defendants Bartow County, Millsap, and CorrectHealth were negligent in their credentialing of various practitioners, physicians, agents and employees who provided care to Mr. Duncan, and in their continued retention and failure to supervise such physicians, practitioners, agents, and employees.

235.

Defendants Bartow County, Millsap, and CorrectHealth were negligent in failing to train and/or otherwise establish that various practitioners responsible for and involved in the care of Mr. Duncan had the requisite knowledge and expertise to attend, diagnose and treat such a patient/inmate without hands-on supervision and in failing to have adequate and appropriate safeguards to ensure that the treatment of life-threatening conditions and/or conditions being the knowledge and expertise of their nurses, medical assistants and technicians and/or staff were handled and addressed by a physician or other appropriate medical personnel, and in such other and further acts of negligence as may be shown at trial.

236.

As a result of the negligence of Defendants Bartow County, Millsap, and CorrectHealth, Mr. Duncan suffered medical expenses, physical injuries, pain and suffering, and mental and emotional distress.

### COUNT VII
### (ALL DEFENDANTS)
### ORDINARY NEGLIGENCE

237.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint above as if fully restated.

60

238.

Defendants, whether themselves or through their agents, employees, or personnel, had a duty to exercise ordinary and reasonable care in their provision of services to Mr. Duncan.

239.

The Defendants failed to exercise ordinary and reasonable care in their provision of services to Mr. Duncan.

240.

As a direct and proximate result of the ordinary negligence committed by the Defendants, whether themselves directly or through their agents, employees, or personnel, Mr. Duncan suffered injuries, physical and mental pain and suffering, including, without limitation, the pain and suffering caused by the events laid out above.

241.

Accordingly, Plaintiff is entitled to recover damages for the pain and suffering, medical expenses, and loss past and future earnings incurred as a result of the ordinary negligence of the Defendants.

## COUNT VIII
### (DEFENDANTS BARTOW COUNTY, MILLSAP, AND CORRECTHEALTH) NUISANCE

242.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint above as if fully restated.

243.

Defendants have continuously and knowingly provided inadequate medical care services to its inmates.

244.

Defendants had knowledge that the failure to provide adequate medical services to inmates constituted a dangerous condition that would cause imminent and likely harm to inmates.

245.

Despite such knowledge, Defendants failed to take any action to correct the conditions, thereby maintaining conditions in which inadequate medical care continued to be provided.

246.

The Defendants failure to take corrective action, and thereby continuing to provide inadequate medical, and with knowledge of imminent and likely harm to inmates, exceeds the concept of mere negligence.

247.

Defendants actions, and failure to take corrective action constituted a continuing nuisance.

248.

As a direct and proximate result of the continuing nuisance created by Defendants, Mr. Duncan suffered medical expenses, physical injuries, pain and suffering, and mental and emotional distress.

## COUNT IX
## (ALL DEFENDANTS)
## PUNITIVE DAMAGES

249.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint above as if fully restated.

250.

Defendants' conduct as described above was reckless, willful, and wanton, and demonstrates a conscious indifference to the consequences of his actions and entitles Plaintiff to an award of punitive damages.

## COUNT X
## (ALL DEFENDANTS)
## RECOVERY OF EXPENSES OF LITIGATION PURSUANT TO O.C.G.A. § 13-6-11 and
## 42 U.S.C. § 1988 AND OTHER APPLICABLE LAWS

251.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint above as if fully restated.

252.

Defendants have acted in bad faith, have been stubbornly litigious and have caused the Plaintiff unnecessary trouble and expense in the defense of this action.

253.

Plaintiff is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 for having to institute this proceeding.

## JURY DEMAND

254.

Plaintiff hereby demands that all issues be tried by a jury of twelve persons.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays that this Court award the following relief from Defendants:

a)  An award of compensatory damages in an amount to be proven at trial, including interest;

b)  An award of punitive damages in favor of Plaintiffs against all Defendants;

c)  Reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988 and Georgia law;

d)  All costs of court;

e)  Plaintiff have a trial by jury; and

f)  Such other and further relief as the Court may deem just and proper.

This 13th day of December, 2023.

PAYNE & DU TOIT

*/s/ Catherine Payne*

2275 Marietta Blvd NW
Ste. 270-245
Atlanta, GA 30318-2019
404-850-5000
cpayne@pdtfirm.com
adutoit@pdtfirm.com

Catherine D. Payne
Georgia Bar No. 463911
Anne Marie du Toit
Georgia Bar No. 213320
*Attorneys for Plaintiff*

# EXHIBIT 1

## To Complaint



# PAYNE & DU TOIT

2275 Marietta Blvd NW
Ste. 270-245
Atlanta, GA 30318-2019
www.pdtfirm.com

Catherine D. Payne

Phone: 404-850-5000
Fax: 404-777-5807

cpayne@pdtfirm.com

*Via Certified Mail, Return Receipt Requested*

July 21, 2023

Bartow County
c/o Bartow County Board of Commissioners
135 W Cherokee Ave
Suite 251
Cartersville, GA 30120

Steve Taylor
Bartow County Commissioner
135 W Cherokee Ave
Suite 251
Cartersville, GA 30120

Kathy Gill
Bartow County Clerk
135 W Cherokee Ave
Suite 251
Cartersville, GA 30120

Peter Olson
Bartow County Administrator
135 W Cherokee Ave
Suite 251
Cartersville, GA 30120

W. Clark Millsap, Sheriff
Bartow County Sheriff's Office
104 Zena Drive
Cartersville, GA 30121

Bartow County Sheriff's Office
PO Box 476
104 Zena Drive
Cartersville, GA 30121

Bartow County Jail
104 Zena Drive
Cartersville, GA 30121

Georgia Department of Administrative Services
Risk Management Division
200 Piedmont Avenue SE
Suite 1804, West Tower
Atlanta, GA 30334

CorrectHealth Bartow, LLC
c/o CT Corporation System
106 Colony Park Drive Ste. 800-B
Cumming, GA, 30040-2794

Ante Litem Pursuant to O.C.G.A. § 36-11-1 and 50-21-26
July 21, 2023
Page 2

## ANTE LITEM NOTICE (NOTICE OF CLAIM)
## PURSUANT TO O.C.G.A. §§ 36-11-1, 50-21-26

To Whom It May Concern:

Please be advised that this firm represents James John Duncan, Jr. This letter shall serve as notice of personal injury claims arising out of the events that occurred while Mr. Duncan was in custody at the Bartow County Jail located at 104 Zena Dr, Cartersville, GA 30121 from approximately August 15, 2022 through November 15, 2022. During the time my client was in custody, Bartow County Jail employees, staff, and agents failed to provide him with proper medical attention which resulted in my client suffering significant and permanent injuries as described more fully below. Mr. Duncan repeatedly and continuously reported symptoms of chest pain, shortness of breath, arm numbness, and other symptoms. Despite being fully aware that he was experiencing symptoms of cardiac distress and that failure to provide proper medical attention would lead to a heart attack and permanent heart damage, employees and staff at the Bartow County Jail did nothing.

After weeks of no one listening to him while his symptoms were getting worse to the point of being unbearable, Mr. Duncan had no choice but to call his longtime girlfriend at home to have her send an ambulance. His attempt was shot down when a Bartow County Jail employee told the 911 dispatcher that he was "fine" and did not need an ambulance. Bartow County Jail finally provided its own transport to Piedmont Cartersville Medical Center that same day where it was confirmed that Mr. Duncan had suffered major heart attacks and sustained permanent, severe cardiac damage. The heart attack, heart damage, shortened life span, and other injuries would have been prevented had he received proper medical care while at Bartow County Jail.

Pursuant to O.C.G.A. § 36-11-1 and 50-21-26, this letter provides notice to the governing authority of Bartow County, Bartow County Sheriff's office, Bartow County Sheriff W. Clark Millsap and CorrectHealth Bartow LLC of the personal injury claims of Mr. Duncan.

## I.    Timeline of Events

The following is a timeline and description of some of the pertinent events out of which Mr. Duncan's injuries arose:

1.  On August 15, 2022, Mr. Duncan went through the intake process at Bartow County Jail. His initial blood pressure reading was 168/100 and a repeat reading was 162/98. It was documented that he was taking Norvasc 10mg for HTN.

2.  On August 18, 2022, Mr. Duncan submitted a written medical request informing the Bartow County Jail staff and medical team of his hypertension and need for blood pressure medication. Bartow County Jail Nurse Williams responded in writing on August 20, 2022 that "[he was] currently on hypertension medication...."

2

3. On September 1, 2022, LPM Madison Bankston documented in Mr. Duncan's medical file that he reported to the infirmary complaining of chest pain and shortness of breath for the past two days.

4. On September 1, 2022 Mr. Duncan submitted a written medical request informing the Bartow County Jail staff and medical team that he was experiencing chest pains and shortness of breath. Bartow County Jail Nurse Bankston responded in writing on September 1, 2022 with: "Seen in medical today. I have you scheduled to follow up with our medical provider next week. Please continue taking medications as prescribed and notify staff if symptoms begin again."

5. On September 8, 2022, NP Charlotte Hall documented in Mr. Duncan's medical file that he complained of chest pain in the morning when he came to the medcart to get his medications and that it worsens when he breathes.

6. On September 23, 2022 Mr. Duncan submitted a written medical request informing the Bartow County Jail staff and medical team that he was experiencing chest pain and numbness in his left arm, that he could not feel his hand, and that the pain awoke him from sleep. He further informed them that he had been told by Jail staff and medical that it was not a heart problem and he expressed concern about something happening, especially if it could be prevented. On September 23, 2022, Nurse Joseph responded in writing with: "you are on pain med and you have a chronic care clinic visit scheduled to see the doctor."

7. On September 29, 2022, Mr. Duncan submitted a written medical grievance informing the Bartow County Jail staff and medical team that he had been having chest pains and that he did not know why the problem was not being addressed. He further apologized "for any inconvenience." Nurse Joseph responded on the same day in writing with "you have labs ordered and you have a chronic care visit scheduled with the doctor. Explain the chest pains in more detail. What is it you are wanting? If you feel it is a heart attack, then tell the tower. Do you need to be in medical? You have been caught hoarding meds. You are in your 40's and on a few meds, do not be laying down after eating. Get some activity in. Let the tower know if you are just hurting so ba[d] that you cannot wait until the scheduled doctor's visit."

8. On October 5, 2022, Mr. Duncan submitted a written medical request informing the Bartow County Jail staff and medical team that he thought perhaps his blood pressure medication might need to be changed and that was why his chest was hurting. Nurse Shirley responded on the same day in writing with "you only take it 42% of the time. I will place you on BP checks for a couple of days." LPN Christina Catron noted in his medical records that he had an elevated blood pressure reading at his vistal sign checks but that no new orders were entered at the time, and that med compliance was 37%.

9. On October 7, 2022, Mr. Duncan submitted a written medical request informing the Bartow County Jail staff and medical team that he had blurry vision, and that his eyes

Ante Litem Pursuant to O.C.G.A. § 36-11-1 and 50-21-26
July 21, 2023
Page 4

were burning and he looked like he had busted blood vessels in them. Nurse Bankston responded on the same day in writing with "The medical provider started you on antibiotic eye drops. You can use them twice daily at the pill cart."

10. On October 17, 2022, Mr. Duncan submitted a written medical request informing the Bartow County Jail staff and medical team that he believed his blood pressure medication was causing severe chest pains so he stopped taking it and then when he started taking it again, the severe chest pain returned. He said his pain was not as bad when he was not taking the blood pressure medication. He further informed them that he did need to take blood pressure medication but that he wanted to change medications because of this. He also asked when his provider appointment was to take place. Nurse Bankston responded on the same day in writing with "I've got you down for more vital sign checks this week, scheduled to see the medical provider and you have a chronic care appointment coming up as well."

11. On October 18, 2022, LPN Rebecca Hamilton documented in Mr. Duncan's medical file that he returned to medical at 11:34 complaining of chest pain. His BP was noted to be 209/124 with manual reading of 196/122. She wrote that he refused to take his Norvasc and stated that it made his chest hurt. She notified the provider and received orders to perform an EKG and that pt was on OBS in infirmary.

12. On October 18, 2022, LPN Rebecca Hamilton documented in Mr. Duncan's medical file that he returned to medical at 12:28 and had decreasing blood pressure, and reported no chest pain at the time. She indicated he wanted to go back to the dorm. She advised Mr. Duncan to notify medical if issues persist or worsen.

13. On October 18, 2022, LPN Christina Catron documented in Mr. Duncan's medical file that he returned to medical at 22:00 with complaints of chest pain and that he was complaining about his medication. BP 186/122 103. She further noted that he "agreed to take the Norvasc 10MG x 1 dose and Pepcid 20MG x 1 dose" and that she performed an EKG and called the results into the on-call provider who informed her that he should go to the ER for evaluation.

14. On October 19, 2022 at 21:39, LPN Sheila Williams documented the following in Mr. Duncan's medical file: Inmate came back to medical with c/o chest pain burning , walked in steady gait no guarding of arm or clinching of chest V/S were assessed 196/125,18, 97.4, 110,100 %, then, v/s were taken manually 200/110 and call placed to Mika NP informed her of inmates condition and complaint , New orders for Norvasc 10 mg po, and nitro si and inmate is noncompliant with medications and states that he don't take them because his chest hurts if he takes them and if he don't take them. We informed him that the Dr. has ordered him medications, he states that he is not taking them he wants to go to the hospital, and if we don't send him to the hospital he will call his wife and tell her to call 911 to take. Inmate continued to yell and holler at the officer, and nurses that we are going to let him die. Inmate stormed out of medical cursing that he will not take his medication and his wife will call 911 for him.

4

Ante Litem Pursuant to O.C.G.A. § 36-11-1 and 50-21-26
July 21, 2023
Page 5

Despite the progressing symptoms experienced by Mr. Duncan—of which everyone at Bartow County Jail was aware, no one provided Mr. Duncan with the treatment he needed. They repeatedly ignored him and told him to go back to his cell. Left with no other option, Mr. Duncan called his girlfriend of 20 years and requested that she call 911 to get him an ambulance.

911 dispatch called Bartow County Jail around 9:45pm that evening and the following conversation ensued between the dispatcher and the Bartow County Jail staff that answered:

| | |
|---|---|
| Bartow County Jail: | This is [inaudible] |
| 911 Dispatcher: | Hey, it's Erica in Dispatch |
| Bartow: | Yeah |
| 911: Hey. | We've got a lady, she's called in, Floyd patched her through. She says her husband is… |
| Bartow: | James Duncan |
| 911: | Uh huh |
| Bartow: | *He's fine and he does not need an ambulance.* |
| 911: | Ok. She said he's having severe chest pains, his blood pressure is through the roof and nobody will help him. |
| Bartow: | No. It's already been checked by medical. It's slightly elevated. When they went to give him medications he refused them because he wants to …[inaudible] … go to the hospital. |

After additional pleas by Mr. Duncan, the Sheriff's office finally transported him to Piedmont Cartersville Hospital that night. He arrived at approximately 10:25pm and it was quickly determined by ER staff that he was having a heart attack with 100% blockage in his left anterior descending artery. Emergency surgery was performed to place stents and during this surgery it was further determined that there was also blockage of his right coronary artery. A subsequent surgery was scheduled for a few days later to treat the second blockage but Mr. Duncan began experiencing a second heart attack which required the surgery to be completed sooner. His right coronary artery was treated by stent placement. Further evaluation revealed ischemic cardiomyopathy and an ejection fraction of 20-34%.

Ante Litem Pursuant to O.C.G.A. § 36-11-1 and 50-21-26
July 21, 2023
Page 6

15. On October 21, 2022, Mr. Duncan was discharged from the hospital. The hospital informed Bartow County Jail that he required a Life Vest. The Bartow County Jail never procured one for him.

16. On November 12, 2022, Mr. Duncan returned to the Emergency Department at Piedmont Cartersville Hospital to be evaluated for possible heart failure after experiencing episodes of syncope. He was discharged on November 15, 2022. His Ejection Fraction was 30-35%.

## II.     Liability of Bartow County, Bartow County Sheriff's Office, Bartow County Sheriff W. Clark Millsap and CorrectHealth Bartow LLC

Bartow County, Bartow County Sheriff's Office, Bartow County Sheriff W. Clark Millsap and CorrectHealth Bartow LLC, and their nurses, nurses' aides, nurse practitioners, medical doctors and other staff and medical professionals involved in the care of Mr. Duncan failed to:

A. Diagnose Mr. Duncan as having an evolving cardiac problem and being in cardiac distress;
B. Properly evaluate Mr. Duncan's changing condition;
C. Properly assess and evaluate Mr. Duncan as having a heart attack and/or being at increased risk of having a heart attack;
D. Promptly report signs and symptoms of an emerging cardiac condition to a cardiologist;
E. Promptly, but no later than September 1, 2022 when Mr. Duncan reported experiencing chest pain and shortness of breath, refer him to a cardiologist for cardiac workup to properly evaluate his emerging cardiac condition; and
F. Immediately procure a Life Vest for Mr. Duncan upon his return to Bartow County Jail from Cartersville Medical Center.

The failure to adhere to the standard of care as outlined above resulted in significant injuries and pain and suffering to Mr. Duncan. Had they adhered to the standard of care as outlined above, Mr. Duncan would not have experienced his heart attacks and would not have suffered the severe heart damage that he did. He now has significant physical limitations due to his heart damage and his lifespan has been shortened. He is now at a high risk for sudden cardiac death and a 50% risk of dying in the next five years as a result of the acts and omissions of Bartow County, Bartow County Sheriff's office, Bartow County Sheriff W. Clark Millsap and CorrectHealth Bartow LLC, as wells as their employees, agents, and representatives.

Additional information on pertinent events and the causal relationship between these events and Mr. Duncan's injuries can be found in the Affidavit of Emil A. Dameff, M.D., CCHP, attached hereto as Exhibit 1, and the Affidavit of Joshua M Willis, MD, FACC, FSCAI, attached hereto as Exhibit 2. Both Affidavits are incorporated as if stated fully herein.

As evidenced by Mr. Duncan's records and the Affidavits attached hereto, all entities (Bartow County, Bartow County Sheriff's office, Bartow County Sheriff W. Clark Millsap and CorrectHealth Bartow LLC and their agents and employees) were well aware that Mr. Duncan was experiencing symptoms of cardiac distress and required swift medical intervention. And they were

Ante Litem Pursuant to O.C.G.A. § 36-11-1 and 50-21-26
July 21, 2023
Page 7

further aware that failing to provide the necessary medical intervention in a situation like Mr. Duncan's can – and did in his case—lead to heart attack, heart damage, and shortened life span.

As explained above and in the affidavits attached hereto, the acts or omissions which caused Mr. Duncan's loss include, but are not limited to: (1) failing to provide James Duncan, Jr. prompt medical care, (2) delaying James Duncan, Jr.'s medical treatment during a known medical emergency, and (3) providing James Duncan, Jr. medical care that deviated form that degree of skill and care which, under similar conditions and like surrounding circumstances, is ordinarily employed by medical doctors, nurses, medical assistants, and technicians. For a more thorough explanation of the acts and omissions which caused the loss at issue, please see the Affidavit of Emil A. Dameff, M.D., CCHP, attached hereto as Exhibit 1, and the Affidavit of Joshua M Willis, MD, FACC, FSCAI, attached hereto as Exhibit 2. Mr. Duncan further alleges that his injuries were caused by the policies and procedures of Bartow County, Bartow County Sheriff's office, Bartow County Sheriff W. Clark Millsap and CorrectHealth Bartow LLC, of: (1) failing to timely respond to medical issues, (2) failing to timely respond to known medical emergencies, (3) allowing overcrowding and understaffing at Bartow County Jail, (4) failing to properly retain, train, and supervise medical personnel, (5) and failing to provide sufficient medical staff and equipment at Bartow County Jail.

## III.    Amount of Damages Sought

As a result of the above injuries caused, Mr. Duncan is hereby demanding $15,000,000 from Bartow County, Bartow County Sheriff's Office, Bartow County Sheriff W. Clark Millsap and CorrectHealth Bartow LLC.

## IV.    Conclusion

Pursuant to O.C.G.A. § 36-11-1 and 50-21-26, this letter provides notice to the governing authority of Bartow County, Bartow County Sheriff's office, Bartow County Sheriff W. Clark Millsap and CorrectHealth Bartow LLC regarding the above-referenced claims and demands for compensation, including attorneys' fees and litigation expenses, and punitive damages where appropriate. Pursuant to O.C.G.A. § 36-11-1 and 50-21-26, this notice shall constitute an offer of compromise, which if not settled by Bartow County, Bartow County Sheriff's office, Bartow County Sheriff W. Clark Millsap and CorrectHealth Bartow LLC within 30 days from its presentation, will not be binding on our client, who has the right to seek additional and further damages at trial.

Respectfully submitted,

PAYNE & DU TOIT

Catherine D. Payne, Esq.

*Attorneys for Claimant James Duncan, Jr.*

# EXHIBIT 1

STATE OF FLORIDA

COUNTY OF CHARLOTTE

### AFFIDAVIT OF EMIL A. DAMEFF, M.D., CCHP

I, Emil A. Dameff, M.D., CCHP, personally appeared before the undersigned officer duly authorized to administer oaths in the State of Florida, who having been duly sworn, depose and state as follows:

1.

My name is Emil A. Dameff, M.D., CCHP. I am over the age of twenty-one years, I suffer from no legal disabilities, and I make this Affidavit under oath based upon my own personal knowledge and review of the medical records of James John Duncan ("Mr. Duncan"), as well as my own professional knowledge, education, training, and experience outlined in my CV, attached hereto and incorporated herein by reference as Exhibit A. I am competent in all respects to testify regarding the matters set forth herein.

2.

After receiving my undergraduate degree from Southern College in Collegedale, Tennessee, I graduated with a medical degree from the University of Miami in 1991 and completed my internship in Internal Medicine at the University of Florida in 1992. I have been continuously licensed by the appropriate regulatory agency as a physician to practice medicine in the state of Florida since 1992 and have been continuously practicing medicine in Florida since that time. I am actively engaged in private practice that includes rendering care and treatment to patients at ShorePoint Health Punta Gorda (Formerly Riverside), where I have been regularly and actively working full time since December 1999. I am on the ShorePoint Health Punta Gorda Hospital Board of Trustees and am currently serving as President.

1

3.

In February of 1993, I began my career in correctional medicine with the Florida Department of Corrections, working as a Clinic Coordinator and institutional Chief Health Officer before becoming a Regional Director of Health Care for the State of Florida. From 2001-2009 I was the Regional Medical Director for Wexford Health Sources Inc, heading multiple projects for the company, including development of the Computer-Assisted Reception Process (CARP) for the Florida Department of Corrections; a statewide Electronic Medical Record implementation for the Mississippi Department of Corrections; and the ongoing expansion of telemedicine for the West Virginia Division of Corrections. From 2009 to 2015 I served as the Corporate Medical Affairs Director for Wexford Health, where I lead the team responsible for establishing the company's medical protocols and directs the clinical decision making of our field Regional Medical Directors and staffs. Since 2015 I have been regularly serving as a consultant to correctional health care companies and providing medical services to inmates. I spend approximately 32 hours per week throughout the year directing medical care for and providing medical care directly to inmates. As a part of my daily responsibilities, I supervise and oversee the clinical practice of nursing professionals in jails and prisons, including but not limited to registered nurses, licensed practical nurses, and nurse practitioners.

4.

I have been licensed as a Certified Correctional Health Professional since 2011, and currently maintain this license.

5.

I have actual professional knowledge and experience in the area of practice in which my opinions are given as a result of having been regularly engaged in the active practice of such area of specialty of my profession since 1992 and have been specifically providing medical services to inmates since 1993. Furthermore, for greater than three of the last five years prior to the negligence described below, I have been engaged in the active practice of medicine in the correctional health environment. I have been actively and regularly involved in diagnosing, assessing, planning for care, and treating inmates in the correctional health environment who suffer from the same or similar medical conditions as Mr. Duncan while an inmate in the Bartow County Jail.

6.

From my background, training, and experience in the care and treatment of prisoners and inmates, I am familiar with the standards of care applicable to prisons as well as jails similar to Bartow County Jail. Additionally, as a member of the interdisciplinary care team, I regularly supervised and instructed nursing professionals in jails and prisons, including but not limited to registered nurses, licensed practical nurses, nurse practitioners, and others in providing care and services to jail and prison inmates.

7.

Based on my education, training and experience I am familiar with that degree of care and skill ordinarily exercised by correctional facilities, nurses, nurses' aides, certified nursing assistants, registered nurses, licensed practical nurses, nurse practitioners, medical doctors, and others under similar conditions and like surrounding circumstances to those considered in this

3

Affidavit. More specifically, I have actual professional knowledge and experience in connection with caring for inmates in a correctional facility, including but not limited to residents with the medical conditions and diagnoses experienced by Mr. Duncan with sufficient frequency to establish an appropriate level of knowledge described in this Affidavit. I am competent to give the opinions contained in this Affidavit.

**8.**

In connection with providing my opinions in this Affidavit, I have reviewed the following medical records of Mr. Duncan in formulating my opinion:

    A. Correct Health Records

    B. Piedmont Cartersville Hospital Medical Records

    C. Metro Atlanta Ambulance Service Records

    D. Harbin Clinic Records

9.

Each of the opinions that I express herein are given to a reasonable degree of medical probability.

10.

As the factual basis for my opinions herein, based upon my review of the foregoing medical records, I have assumed the following facts to be true and the following is a brief overview of pertinent events that occurred in this matter:

4

A. On August 15, 2022, Mr. Duncan went through the intake process at Bartow County Jail in Georgia. His initial blood pressure reading was 168/100 and a repeat reading was 162/98. It was documented that he takes Norvasc 10mg for HTN.

B. On August 18, 2022, Mr. Duncan submitted a written medical request informing the Bartow County Jail staff and medical team of his hypertension and need for blood pressure medication. Bartow County Jail Nurse Williams responded in writing on August 20, 2022 that "[he was] currently on hypertension medication...."

C. On September 1, 2022, LPM Madison Bankston documented in Mr. Duncan's medical file that he reported to the infirmary complaining of chest pain and shortness of breath for the past two days. She further documented: EKG-states sinus rhythm; lung sounds clear; heart sounds normal; BP 141/80.

D. On September 1, 2022 Mr. Duncan submitted a written medical request informing the Bartow County Jail staff and medical team that he was experiencing chest pains and shortness of breath. Bartow County Jail Nurse Bankston responded in writing on September 1, 2022 with: "Seen in medical today. I have you scheduled to follow up with our medical provider next week. Please continue taking medications as prescribed and notify staff if symptoms begin again."

E. On September 8, 2022, NP Charlotte Hall documented in Mr. Duncan's medical file that he complained of chest pain in the morning when he came to the med-cart to get his medications and that it worsens when he breathes.

F. On September 23, 2022 Mr. Duncan submitted a written medical request informing the Bartow County Jail staff and medical team that he was experiencing chest pain and numbness in his left arm, that he could not feel his hand, and that the pain awoke him

from sleep. He further informed them that he had been told by Jail staff and medical that it was not a heart problem and he expressed concern about something happening, especially if it could be prevented. On September 23, 2022, Nurse Joseph responded in writing with: "you are on pain med and you have a chronic care clinic visit scheduled to see the doctor."

G. On September 29, 2022, Mr. Duncan submitted a written medical grievance informing the Bartow County Jail staff and medical team that he had been having chest pains and that he did not know why the problem was not being addressed. He further apologized "for any inconvenience." Nurse Joseph responded on the same day in writing with "you have labs ordered and you have a chronic care visit scheduled with the doctor. Explain the chest pains in more detail. What is it you are wanting? If you feel it is a heart attack, then tell the tower. Do you need to be in medical? You have been caught hoarding meds. You are in your 40's and on a few meds, do not be laying down after eating. Get some activity in. Let the tower know if you are just hurting so back that you cannot wait until the scheduled doctor's visit."

H. On October 5, 2022, Mr. Duncan submitted a written medical request informing the Bartow County Jail staff and medical team that he thought perhaps his blood pressure medication might need to be changed and that was why his chest was hurting. Nurse Shirley responded on the same day in writing with "you only take it 42% of the time. I will place you on BP checks for a couple of days." LPN Christina Catron noted in his medical records that he had an elevated blood pressure reading at his vistal sign checks but that no new orders were entered at the time, and that med compliance was 37%.

I.  On October 7, 2022, Mr. Duncan submitted a written medical request informing the Bartow County Jail staff and medical team that he had blurry vision, and that his eyes were burning and he looked like he had busted blood vessels in them. Nurse Bankston responded on the same day in writing with "The medical provider started you on antibiotic eye drops. You can use them twice daily at the pill cart."

J.  On October 17, 2022, Mr. Duncan submitted a written medical request informing the Bartow County Jail staff and medical team that he believed his blood pressure medication was causing severe chest pains so he stopped taking it and then when he started taking it again, the severe chest pain returned. He said his pain was not as bad when he was not taking the blood pressure medication. He further informed them that he did need to take blood pressure medication but that he wanted to change medications because of this. He also asked when his provider appointment was to take place. Nurse Bankston responded on the same day in writing with "I've got you down for more vital sign checks this week, scheduled to see the medical provider and you have a chronic care appointment coming up as well."

K.  On October 18, 2022, LPN Rebecca Hamilton documented in Mr. Duncan's medical file that he returned to medical at 11:34 complaining of chest pain. His BP was noted to be 209/124 with manual reading of 196/122. She noted that he refused to take his Norvasc and stated that it made his chest hurt. She notified the provider and received orders to perform an EKG and that pt was on OBS in infirmary.

L.  On October 18, 2022, LPN Rebecca Hamilton documented in Mr. Duncan's medical file that he returned to medical at 12:28 and had decreasing blood pressure, and reported no

7

chest pain at the time. She indicated he wanted to go back to the dorm. She advised Mr. Duncan to notify medical if issues persist or worsen.

M. On October 18, 2022, LPN Christina Catron documented in Mr. Duncan's medical file that he returned to medical at 22:00 with complaints of chest pain and that he was complaining about his medication. BP 186/122 103. She further noted that he "agreed to take the Norvasc 10MG x 1 dose and Pepcid 20MG x 1 dose" and that she performed an EKG and called the results into the on-call provider who informed her that he should go to the ER for evaluation.

N. On October 19, 2022 at 21:39, LPN Sheila Williams documented the following in Mr. Duncan's medical file: Inmate came back to medical with c/o chest pain burning , walked in steady gait no guarding of arm or clinching of chest V/S were assessed 196/125,18, 97.4, 110,100 %, then, v/s were taken manually 200/110 and call placed to Mika NP informed her of inmates condition and complaint , New orders for Norvasc 10 mg po, and nitro si and inmate is noncompliant with medications and states that he don't take them because his chest hurts if he takes them and if he don't take them. We informed him that the Dr. has ordered him medications, he states that he is not taking them he wants to go to the hospital, and if we don't send him to the hospital he will call his wife and tell her to call 911 to take. Inmate continued to yell and holler at the officer, and nurses that we are going to let him die. Inmate stormed out of medical cursing that he will not take his medication and his wife will call 911 for him.

O. On October 19, 2022, Mr. Duncan was transported to Piedmont Cartersville Medical Center where he was diagnosed with acute ST elevation myocardial infarction (STEMI) due to 100% occlusion of mid portion of left anterior descending (LAD) coronary artery

8

(HC). He received a stent and subsequently experienced a non-ST elevated myocardial infarction) (HC) (NSTEMI) on October 20, 2022. Further evaluation revealed ischemic cardiomyopathy, Ejection Fraction of 20-34%. Medical therapy was initiated for treatment of coronary artery disease and ischemic cardiomyopathy. Orders were placed for Life Vest (external wearable defibrillator vest) but he did not receive one before he was discharged from Cartersville Medical Center on October 21, 2022 and was ordered to report back to Bartow County Jail.

P. On October 24, 2022 LPN Patricia Lee at the Bartow County Jail documented in Mr. Duncan's medical file that he had returned from the hospital and that he needed a Life Vest.

Q. On October 25, 2022 Mr. Duncan reported to the Bartow County Jail infirmary with shortness of breath. He was seen by Christina Catron, LPN. He informed her he was going to lay down and try to rest. He was returned to Med 4.

R. On October 28, 2022, NP Kelly Kurtz documented: Infirmary pt s/p hospital visit MI with stent placement supposed to get a life vest. Nurse Kurtz further noted: Needs cardiology consult life vest in the works get all medical records from last hospital stay…s/p MI with stents, life vest and cardiology get records from hospital. Fu MD in 14 week.

S. On November 9, 2022, Phillip Nowlin, MD documented: CCC HTN MI, was in the hospital. He got out of the hospital 10-23-22. It was recommended that he have a life vest.

T. On November 12, 2022, Mr. Duncan was sent to the Emergency Department at Piedmont Cartersville Hospital. LPN Jennifer Pulido documented that his roommate notified her

9

that Mr. Duncan had fallen when he stood up. When Nurse Pulido arrived in his room, he was sitting on the bed, diaphoretic and pale. BP 73/53, 54, 95%, 97.1. She notified security to contact EMS for transport to Piedmont Cartersville Hospital. She contacted S. Hatfield for orders.

U. On November 13, 2022 at 8:00, LPN Jennifer Pulido documented that she contacted Piedmont Cartersville and spoke to a nurse in the ER who informed Nurse Pulido that Mr. Duncan was still I the ER but would be transferred to a room for admission as soon as one was available. The doctor had not seen him that morning.

V. On November 13, 2022 at 8:00, LPN Patricia Lee documented that Mr. Duncan was to be admitted to Cartersville Medical Center for possible heart failure. He was readmitted to Piedmont Cartersville Medical Center for evaluation of syncope. He was discharged on November 15, 2022 with the following diagnoses: vasovagal syncope; transient hypotension; volume depletion; coronary disease status post stent; chronic combined systolic and diastolic heart failure with an Ejection Fraction of 30-35%.

11.

Based on my education, training, experience and the facts contained in the records I reviewed, it is my opinion that Bartow County and Correct Health and their nurses, nurses' aides, nurse practitioners, medical doctors and other staff involved in the care of Mr. Duncan, violated the standard of care and failed to exercise that degree of care and skill ordinarily exercised by medical professionals in the correctional health environment generally under the same or similar conditions and like surrounding circumstances in the care and treatment of Mr. Duncan.

12.

Based upon my review of the medical records and materials described above, and my education, training, and expertise, it is my professional opinion that the applicable standard of care required the Bartow County and Correct Health staff to monitor, supervise, and care for residents of the correctional facility, including Mr. Duncan.

13.

More specifically, it is my opinion that the standard of care required Bartow County and Correct Health and their nurses, nurses' aides, nurse practitioners, medical doctors and other staff and medical professionals involved in the care of Mr. Duncan to:

A. Diagnose Mr. Duncan as having an evolving cardiac problem;

B. Properly evaluate Mr. Duncan's changing condition;

C. Properly assess and evaluate Mr. Duncan as having a heart attack and/or being at increased risk of having a heart attack;

D. Promptly report signs and symptoms of an emerging cardiac condition to a cardiologist;

E. Promptly, but no later than September 1, 2022 when Mr. Duncan reported experiencing chest pain and shortness of breath, refer him to a cardiologist for cardiac workup to properly evaluate his emerging cardiac condition; and

F. Immediately procure a Life Vest for Mr. Duncan upon his return to Bartow County Jail from Cartersville Medical Center.

14.

11

It is my opinion, based on my education, training, experience, and my review of the aforementioned records, that Bartow County and Correct Health and their nurses, nurses' aides, nurse practitioners, medical doctors and other staff and medical professionals involved in the care of Mr. Duncan violated the standard of care for nurses, nurses' aides, nurse practitioners, medical doctors and other staff involved in the care and treatment of Mr. Duncan in at least the following manners:

G. **Failing to diagnose Mr. Duncan as having an evolving cardiac problem;**

H. **Failing to properly evaluate Mr. Duncan's changing** condition;

I. Failing to properly assess and evaluate Mr. Duncan as having a heart attack and/or being at increased risk of having a heart attack;

J. Failing to promptly report signs and symptoms of an emerging cardiac condition to a cardiologist;

K. Failing to promptly, but no later than September 1, 2022 when Mr. Duncan reported experiencing chest pain and shortness of breath, refer him to a cardiologist for cardiac workup to properly evaluate his emerging cardiac condition;

L. Failing to seek and/or obtain timely review of Mr. Duncan's signs and symptoms by a cardiologist;

M. Allowing Mr. Duncan's evolving cardiac condition to be untreated for weeks without proper intervention and treatment;

N. Failing to provide timely and proper cardiac intervention to Mr. Duncan;

O. Failing to immediately procure a Life Vest for Mr. Duncan upon his return to Bartow County Jail from Cartersville Medical Center.

15.

It is my opinion that the failure of Bartow County and Correct Health and their nurses, nurses' aides, nurse practitioners, medical doctors and other staff and medical professionals involved in the care of Mr. Duncan's care to adhere to the standard of care as outlined above resulted in significant injuries and pain and suffering to Mr. Duncan.   Had they adhered to the standard of care as outlined above, Mr. Duncan would not have experienced his heart attacks and would not have suffered the severe heart damage that he did.

16.

This Affidavit is not intended to provide an exhaustive listing of all of the opinions which I may have concerning the matters at issue in the case and I reserve the right to express additional opinions based on any additional information which may come to my attention as the case proceeds. The opinions expressed herein are not intended to and should not be construed to foreclose or exclude opinions that other negligent acts or omissions and regulatory/statutory violations may have also occurred or contributed to Mr. Duncan's outcome, but rather is given to meet the limited requirements of O.C.G.A. §9-11-9.1 to set forth at least one act of negligence for the Defendants in question.

FURTHER AFFIANT SAYETH NAUGHT.

I certify under penalty of law that the foregoing is true and correct.

Signed, this ___30___ day of _June_, 2023.

EMIL A. DAMEFF, M.D., CCHP

SWORN TO AND SUBSCRIBED before me this 30 day of ___June___, 2023.

NOTARY PUBLIC [seal]

MINERVA GONZALEZ
Notary Public - State of Florida
Commission # HH 035819
My Comm. Expires Dec 19, 2024
Bonded through National Notary Assn.

14

# EXHIBIT 2

STATE OF GEORGIA

COUNTY OF FULTON

**AFFIDAVIT OF JOSHUA M WILLIS, MD, FACC, FSCAI**

I, Joshua M Willis, MD, FACC, FSCAI, personally appeared before the undersigned officer duly authorized to administer oaths in the State of Georgia, who having been duly sworn, depose and state as follows:

1.

My name is Joshua M Willis, MD, FACC, FSCAI. I am over the age of twenty-one years, I suffer from no legal disabilities, and I make this Affidavit under oath based upon my own personal knowledge and review of the medical records of James John Duncan ("Mr. Duncan"), as well as my own professional knowledge, education, training, and experience outlined in my CV, attached hereto and incorporated herein by reference as Exhibit A. I am competent in all respects to testify regarding the matters set forth herein.

2.

I graduated with a medical degree from the Howard University College of Medicine in 2002. I completed my Internal Medicine Residency at Tulane University in 2005, a Cleveland Clinic General Cardiovascular Disease Fellowship in 2010, and a University of Florida Interventional Cardiology Fellowship in 2011. I have been continuously board certified by the American Board of Internal Medicine in the disciplines of General Cardiovascular Disease and Interventional Cardiology since 2010 and 2011, respectively. I have been continuously licensed by the appropriate regulatory agency as a physician to practice medicine since 2002 and have been specifically licensed to practice medicine in Georgia since 2011 (License No. 66373). I am

actively engaged in private practice that includes rendering care and treatment to patients at Wellstar Douglas Hospital, where I have been regularly and actively working full time as an Interventional Cardiologist and the Medical Director since 2016. As a part of my regular daily responsibilities, I not only spend approximately 90% of my time engaged in my own clinical practice caring for cardiac patients, but I also supervise and oversee the clinical practice of other doctors as well as nursing professionals, including but not limited to registered nurses, licensed practical nurses, and nurse practitioners.

3.

I have actual professional knowledge and experience in the area of practice in which my opinions are given as a result of having been regularly engaged in the active practice of interventional cardiology since beginning my General Cardiology Fellowship in 2007. Furthermore, for greater than three of the last five years prior to the negligence described below, I have been engaged in the active practice of interventional cardiology in Georgia. I have been actively and regularly involved in diagnosing, assessing, planning for care, and treating cardiac patients who suffer from the same or similar medical conditions as Mr. Duncan while an inmate in the Bartow County Jail.

4.

From my background, training, and experience in the care and treatment of patients, I am familiar with the standards of care applicable to patients similar to Mr. Duncan. Additionally, as a member of the interdisciplinary care team, I have regularly supervised and instructed other doctors as well as nursing professionals, including but not limited to registered nurses, licensed

practical nurses, and nurse practitioners, in providing care and services to patients in need of cardiac-related medical care and treatment.

5.

Based on my education, training and experience I am familiar with that degree of care and skill ordinarily exercised by nurses, nurses' aides, certified nursing assistants, registered nurses, licensed practical nurses, nurse practitioners, medical doctors, and others under similar conditions and like surrounding circumstances to those considered in this Affidavit. More specifically, I have actual professional knowledge and experience in connection with caring for patients with the medical conditions and diagnoses experienced by Mr. Duncan with sufficient frequency to establish an appropriate level of knowledge described in this Affidavit. I am competent to give the opinions contained in this Affidavit.

6.

In forming my opinions rendered in this Affidavit, I have relied, in part, on the following medical literature found in the PubMed search engine:

| Reference 1 | ***Blood pressure control and primary prevention of stroke: Summary of the recent clinical trial data and meta- analyses*** Curr Hypertens Rep. 2013; 15(6): 559–574. Published online 2013 Oct 25. doi: 10.1007/ s11906-013-0401-0 Pub Med ID 24158454 |
| --- | --- |
| Reference 2 | ***Assessment of Cardiovascular Disease Risk: A 2022 Update*** Endocrinol Metab Clin North Am 2022 Sep;51 (3):483-509 PMID 35963625 |
| Reference 3 | ***Withdrawal of pharmacological treatment for heart failure in patients with recovered dilated cardiomyopathy (TRED-HF):*** an open-label, pilot, randomised trial Lancet 2019 Jan 5;393(10166):61-73 PMID: 30429050 |

| Reference 4 | *2013 ACCF/AHA guideline for the management of heart failure: a report of the American College of Cardiology Foundation/American Heart Association Task Force on Practice Guidelines* PMID: 23747642 |
|---|---|

7.

In connection with providing my opinions in this Affidavit, I have reviewed the following medical records of Mr. Duncan in formulating my opinion:

A.  Correct Health Records (August through November 2022)

B.  Piedmont Cartersville Hospital Medical Records (August through November 2022)

C.  Metro Atlanta Ambulance Service Records

D.  Harbin Clinic Records

8.

Each of the opinions that I express herein are given to a reasonable degree of medical certainty.

9.

As the factual basis for my opinions herein, based upon my review of the foregoing medical records, I have assumed the facts contained in this Affidavit to be true.

10.

The following is a brief overview of pertinent events that occurred in this matter:

A.  James Duncan is a 45 yr old gentleman with the following CAD risk factors:

    1.  Hypertension-poorly controlled

4

2. Active tobacco abuse greater than 20 pack year history

3. Premature Family Hx of Coronary Artery Disease (CAD)

4. Father-CAD in his 50's

5. Grandfather CAD in his 40's

6. Dyslipidemia (bad cholesterol)-untreated

7. Prior recreational Methamphetamine use

B. James was in his usual state of health until August 31, 2022 when he began complaining of chest pain and shortness of breath by way of written correspondence to the Bartow County Jail Nursing staff. He sent five messages in total, all with complaints of chest pain that was occurring with increasing frequency and severity. Despite his multiple CAD risk factors, the only work up that was performed was a 12 lead ECG on September 1, 2022. Unfortunately his chest pain continued to progress. On October 19th, when his chest pain was not being addressed he requested that his wife call 911. He was transported to Piedmont Cartersville Medical Center where he was diagnosed with an anterior STEMI and subsequent ischemic cardiomyopathy.

C. Below are the nursing notes documenting his worsening chest pain and the timeline of response taken directly from the Correct Health Records:[1]


1.

Issue ID: 29095688 LastStatus:

Last Assigned to:

Medical

---

[1] These portions have been copied and pasted verbatim (including misspellings) directly from the medical records.

For 291580: JAMES DUNCAN ZPASS PASS 01 on 8/31/2022 3:49:26 PM Dates and Times are

presented in Eastern Time (US &Canada)

Closed by Nurse Bankston on 9/1/2022 4:09:20 PM None on 9/1/2022 4:09:19 PM

been haveing chest pains short breth today

Submitted by291580: JAMES DUNCAN ZPASS PASS 01 on 8/31/2022 3:49:26PM

Seen in medical today. I have you scheduled to follow up with our medical provider next week.
Please continue taking medications as prescribed and notify staff fi symptoms begin again

Responded by Nurse Bankston on 9/1/2022 4:09:19 PM

2.

Issue ID: 29338529 Last Status:

Last Assigned to:

Medical

For 291580: JAMES DUNCAN ZPASSPASS 01 on 9/22/2022 8:20:44 PM Dates and Times are
presented ni Eastern Time (US &Canada)

Closed by Nurse Joseph on 9/23/2022 11:18:01 AM None on 9/23/2022 11:17:59 AM

i've been getting random chest pain and numness in my left arm the pain woke me up out of my
sleep,and i couldnt feel my hand i have been to medical 2 times and have been asured that its not
a heart problem ether way i havent been told what the problem is amd it shouldnt be acurring i
dont want to have someting happen to me that could have been provented sincerly james Duncan

Submitted by291580: JAMES DUNCAN ZPASS PASS 01 on 9/22/2022 8:20:44 PM

you are on pain med and you have a chronic care clinic visit scheduled to see the doctor.
Responded by Nurse Josephon 9/23/2022 11:17:59 AM

3.

Issue ID: 29415805 Last Status:

Last Assigned to:

Grievance – Medical

For 291580:JAMES DUNCAN ZPASSPASS01 on 9/29/2022 4:05:33 PM Dates and Times are

presented ni Eastern Time (US &Canada) Closed by Nurse Joseph on 9/29/2022 5:02:22 PM None

on 9/29/2022 5:02:20 PM

been having chest pains dont know why cant get this problum adressed sorry for any inconvenience

Submitted by 291580: JAMES DUNCAN ZPASS PASS 01 on 9/29/2022 4:05:33 PM

you have labs ordered and you have a chronic care visit scheduled with a doctor. explain the chest
pains more in detail. what is it that you are wanting? If you feel ti is heart attack, then tell the
tower. Do you need to be in medical? you have been caught hoarding meds. you are in your 40's
and on a few meds, do not be laying down after eating. get some activity in. Let the tower know fi
you are just hurting so bad that you cannot wait until the scheduled doctor's visit.

Rejected by Nurse Joseph on 9/29/2022 5:02:20 PM

Medical

For291580:JAMES DUNCAN ZPASS PASS 01 on 10/4/2022 2:50:10 PM Dates and Times are

presented in Eastern Time (US &Canada)


       4.

Issue ID: 29468838

Last Status: Closed by 291580: JAMES DUNCAN on 10/5/2022 2:30:22 PM

Last Assigned to: None on 10/5/2022 6:54:14 AM

i think we might need to change my bp med i think thats why my chest herts Submitted by 291580:

JAMES DUNCAN ZPASS PASS 01 on 10/4/2022 2:50:11 PM you only take it 42 % of the time.

I wil place you on BP checks for a couple days Final Response by Nurse Shirley on 10/5/2022

6:54:14 AM

5.

Nursing Progress Note

DOB: 5/24/1977 (45y) Location:

Date: 10/19/2022 Type of Note: Progress Note

Progress Note

Notes:

Time : 21:39

Inmate came back to medical with c/o chest pain burning ,walked insteady gait no guarding of arm or clinching of chest V/S were assessed 196/125, 18.97.4, 110.100 %, then.v /s were taken manually 200/110 and call olaced to MikaN P informed her of inmates condition and complaint. New orders for Norvasc 10 mg po, and nitro sI and inmate is noncompliant with medications and states that he don't take them because his crest hurts it he lakes them and it he don't take them. We informed him that the Dr. has ordered him medications, he states that he is not taking them he wants to go to the hospital, andif we don't send him to the hospital he wil call his wife and tell her to call 911 to take. Inmate continued to yell and holler at the officer, and nurses that we are going to let him die . Inmate stormed out of medical cursing that he will not take his medication and his wife will call 911 for him.

Follow-up Needed:

NO ANSWER PROVIDED

User Name

WILLIAMS, SHEILA, LPN

Save Log

Nursing Progress Note Progress Note for use by nursing stat

Patient Name: DUNCAN, JAMES JOHN Patient Number. 291580

Location:

DOB: 5/24/1977

Facility. BARTOW COUNTY JAIL

Electronically Signed By WILLIAMS, SHEILA, L P on 10/19/2022 22:13:03

8

AuditDateAndTime 10/19/2022 22:13:03

D. On October 19, 2022 his wife activated EMS for evaluation of his chest discomfort. Twelve lead ECG revealed: Normal Sinus Rhythm, normal QRS axis, ST segment elevation consistent with anterior ST segment elevation myocardial infarction.

E. He was transported to Piedmont Cartersville Medical Center for Emergency Cardiac Catheterization and primary PCI (stent placement for heart attack treatment).

F. Dr Chizner performed emergent left heart catheterization (LHC) via right radial approach. Culprit vessel was the LAD 100% occluded reduced to 0% following percutaneous coronary intervention (PCI-opening the artery with balloon and stents, entering the blood vessel system at the wrist). Overnight he developed more chest discomfort and ventricular tachycardia (abnormal heart rate from the bottom half of his heart that is potentially fatal).

G. Initial cardiac catheterization revealed another flow limiting lesion in the RCA, scheduled to be treated in a couple of days. Given the unexpected chest pain and heart rhythm disturbance, angiography of the left system was performed. It confirmed patency of the stent in the LAD placed for treatment of his heart attack. The right coronary artery (RCA) was treated at that time with balloon pre dilatation followed by stent placement.

H. Subsequent evaluation revealed ischemic cardiomyopathy, Ejection Fraction of 20-35% (severely weakened heart placing him at high risk of sudden cardiac death).

I. Guideline directed medical therapy was initiated for treatment of coronary artery disease and ischemic cardiomyopathy. Orders were placed for Life Vest (external wearable

defibrillator vest) given his risk of sudden cardiac death. Unfortunately, he did not receive the LifeVest.

J.  He was re-admitted to the hospital on November 12, 2022 for evaluation of syncope. No sinister etiology was discovered, i.e. no evidence of ventricular arrhythmia and aborted sudden cardiac death. He was managed conservatively. LifeVest was re-ordered but not fitted prior to discharge back to jail.

## Discussion and Interpretation of Medial Records

### 11.

James John Duncan suffered an acute anterior wall myocardial infarction (heart attack) after complaining of stuttering chest discomfort from August 31, 2022 until his wife activated EMS and had him picked up from the Bartow County Jail on October 19th.

### 12.

James has several modifiable risk factors predisposing him to heart attack including:

1.  Poorly treated Hypertension

2.  Dyslipidemia

3.  Tobacco abuse

### 13.

On several occasions he endorsed chest discomfort when taking Norvasc, however, this medication was not transitioned to another class of antihypertensive, e.g. diuretic, beta blocker etc.

His blood pressure is poorly controlled on several encounters, with the highest being 209/124 on 10/18/2022 at 11:34 PM. This is the day prior to his anterior wall myocardial infarction.

14.

Hypertension has a strong causal relationship to major adverse cardiovascular events, i.e. stroke, heart attack and cardiovascular related death. For every 20 point increase in systolic blood pressure or 10 point increase in diastolic blood pressure above 115/75 mm Hg, heart attack and stroke risk double. (Reference 1) The chest pain visit on 11/18/22, his blood pressure was 196/125 mm Hg, repeat measurement 200/110 mm Hg, consistent with increased risk of 16-32 times normal.

15.

Dyslipidemia was diagnosed during the time of his incarceration. Based on the ASCVD risk calculator, his 10 year risk for heart disease or stroke was 11.7%. Optimal risk factor management would reduce this risk to 1.2%. (Reference 2) The recommendation based on risk is for moderate to high intensity statin for risk reduction of major adverse cardiovascular events. Statin medication was never started.

16.

Smoking cessation was not addressed in any clinical documentation.

17.

James had several visits with the medical staff spanning August to October with complaints of chest pain. On September 1st, 2022 at 15:38 he endorsed substernal, intermittent chest pain, characterized as aching, associated with dyspnea, sudden onset following climbing a flight of stairs. ECG was obtained, interpreted as Normal Sinus Rhythm, physical examination documented as normal heart and lung exam. No further evaluation was undertaken.

18.

He continued to complain of chest pain on 9/22/22, 9/29/22 and 10/5/2022 going so far as to relay that he knows something is wrong and he does not want anything to happen that is preventable.

19.

Despite his complaints consistent with accelerating angina, no further evaluation was performed. In alignment with recommendations of ACC, stress testing and transthoracic echocardiography should have been performed for risk stratification and mitigation. Not only was no further testing performed, he had to have a family member activate emergency medical services on his behalf when his continued complaints of chest discomfort were repeatedly ignored.

20.

On October 19th he was hospitalized for acute anterior wall myocardial infarction. Multivessel coronary artery disease was discovered and appropriately managed by Dr Chizner - PCI of the LAD and staged PCI of the RCA. Unfortunately, the damage was already done.

21.

His Ejection Fraction (EF) following primary PCI (heart attack treatment with stent placement) was less than 35% (normal is 50-60%). This finding carries significant implications, see below.

A. Heart Failure carries a 5 year, 50% mortality penalty for all comers, i.e. he has a 50% risk of dying in the next five years.

B. He is at high risk for sudden cardiac death-if his EF does not improve to >35% within 90 days of his heart attack, he will be referred for Implantable Cardioverter Defibrillator (ICD) for primary prevention of sudden cardiac death as per AHA guidelines, see below:

**Class I**

1. ICD therapy is recommended for primary prevention of SCD to reduce total mortality in selected patients with non- ischemic DCM or ischemic heart disease at least 40 days post-MI with LVEF of 35% or less and NYHA class II or III symptoms on chronic GDMT, who have reasonable expectation of meaningful survival for more than 1 year (355,593). (Level of Evidence: A) (Reference 4)

C. He requires Guideline Directed Medical Therapy consisting of Beta Blocker, Mineralocorticoid antagonist, ACE/ARB or ARNI and SGLT 2 inhibitor with the goal of increasing his Ejection Fraction. These therapies will have to be continued indefinitely. We know from trial data that discontinuation of these meds results in recurrence of cardiomyopathy.

22.

*Many patients deemed to have recovered from dilated cardiomyopathy will relapse following treatment withdrawal. Until robust predictors of relapse are defined, treatment should continue indefinitely.* (Reference 3)

23.

In short, James John Duncan had complaints of accelerating angina that went unrecognized and untreated while he was incarcerated, despite his complaints on multiple occasions from August to October of 2022. Despite being clearly indicated, risk factor reduction and further testing, i.e. stress testing, echocardiography, to establish his risk profile were not performed. Even on the day of his myocardial infarction, he had to have his wife call 911 to pick him up from jail and transport him to Piedmont Cartersville Medical Center when his complaints of chest pain were ignored. The end result is that he suffered a heart attack that severely damaged his heart, potentially shortening his lifespan and relegating him to taking guideline directed medical therapy for the rest of his life. Furthermore, he may have to undergo an additional surgical procedure, i.e. ICD implantation for primary prevention of sudden cardiac death.

24.

With a reasonable degree of medical certainty, I can say that the standard of care was breached and that the breach is causally related to his heart attack and subsequent ischemic cardiomyopathy. These events could have been prevented had the standard of care not been violated.

25.

FINAL OPINIONS:

A. I am familiar with the standard of care for patients like this.

B. Based on my education, training, experience and the facts contained in the records I reviewed, it is my opinion that the following medical providers fell below the applicable standard of care: Madison Bankston, LPN, Nurse Joseph, Nurse Shirley, Sheila Williams, LPN, Phillip Nolan, MD and other supervising physicians.

C. The specific care that fell below the applicable standard of care is outlined above and herein.

D. As a direct result of that medical negligence, Mr James John Duncan suffered a heart attack and subsequent heart damage requiring lifelong medical therapy and potentially a significant reduction in life expectancy and quality of life.

E. It is more likely than not had Mr James John Duncan been provided care that met the applicable standard of care he would not have suffered a myocardial infarction and ischemic cardiomyopathy.

F. All of my opinions herein are with a reasonable degree of medical certainty

26.

This Affidavit is not intended to provide an exhaustive listing of all of the opinions which I may have concerning the matters at issue in the case and I reserve the right to express additional opinions based on any additional information which may come to my attention as the case proceeds. The opinions expressed herein are not intended to and should not be construed to foreclose or exclude opinions that other negligent acts or omissions and regulatory/statutory violations may have also occurred or contributed to Mr. Duncan's outcome, but rather is given to meet the limited requirements of O.C.G.A. §9-11-9.1 to set forth at least one act of negligence for the Defendants in question.

FURTHER AFFIANT SAYETH NAUGHT.


I certify under penalty of law that the foregoing is true and correct.

Signed, this ___22nd___ day of ___June___, 2023.

w. Vis, MD

JOSHUA M WILLIS, MD, FACC, FSCAI


SWORN TO AND SUBSCRIBED before me this 22nd day of ___June___, 2023.


NOTARY PUBLIC            [seal]

16



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®.*

Cumming, GA 30040

OFFICIAL USE

Certified Mail Fee $4.35
$3.55
0668
07

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy) $0.00
☐ Return Receipt (electronic) $0.00
☐ Certified Mail Restricted Delivery $0.00
☐ Adult Signature Required $0.00
☐ Adult Signature Restricted Delivery $

Postmark Here JUL 21 2023

Postage $3.03
07/21/2023
Total Postage and Fees $10.93    MARIETTA GA 30068

Sent To CorectHealth Bartow LLC
c/o CT Corp. Sys.
Street and Apt. No., or PO Box No. 1201 Colony Park Dr. Ste 500-B
City, State, ZIP+4® Cumming, GA 30040-2794

PS Form 3800, January 2023 PSN 7530-02-000-9047    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®.*

Cartersville, GA 30120

OFFICIAL USE

Certified Mail Fee $4.35
$3.55
0668
07

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy) $0.00
☐ Return Receipt (electronic) $0.00
☐ Certified Mail Restricted Delivery $0.00
☐ Adult Signature Required $0.00
☐ Adult Signature Restricted Delivery $

Postmark Here JUL 21 2023

Postage $3.03
07/21/2023
Total Postage and Fees $10.93    MARIETTA GA 30068

Sent To Steve Taylor
Bartow County Commissioner
Street and Apt. No., or PO Box No. 135 W. Cherokee Ave. Ste 251
City, State, ZIP+4® Cartersville, GA 30120

PS Form 3800, January 2023 PSN 7530-02-000-9047    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®.*

Cartersville, GA 30120

OFFICIAL USE

Certified Mail Fee $4.35
$3.55
0668
07

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy) $0.00
☐ Return Receipt (electronic) $0.00
☐ Certified Mail Restricted Delivery $0.00
☐ Adult Signature Required $0.00
☐ Adult Signature Restricted Delivery $

Postmark Here JUL 21 2023

Postage $2.79
07/21/2023
Total Postage and Fees $10.69    MARIETTA GA 30068

Sent To Kathy Smith
Bartow County Clerk
Street and Apt. No., or PO Box No. 135 W. Cherokee Ave. Ste 251
City, State, ZIP+4® Cartersville, GA 30120

PS Form 3800, January 2023 PSN 7530-02-000-9047    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®.*

Cartersville, GA 30120

OFFICIAL USE

Certified Mail Fee $4.35
$3.55
0668
07

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy) $0.00
☐ Return Receipt (electronic) $0.00
☐ Certified Mail Restricted Delivery $0.00
☐ Adult Signature Required $0.00
☐ Adult Signature Restricted Delivery $

Postmark Here 2023

Postage $3.03
07/21/2023
Total Postage and Fees $10.93    MARIETTA GA 30068

Sent To Peter Olson
Bartow County Administrator
Street and Apt. No., or PO Box No. 135 W. Cherokee Ave. Ste 251
City, State, ZIP+4® Cartersville, GA 30120

PS Form 3800, January 2023 PSN 7530-02-000-9047    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®.*

Cartersville, GA 30121

OFFICIAL USE

Certified Mail Fee $4.35
$3.55
0668
07

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy) $0.00
☐ Return Receipt (electronic) $0.00
☐ Certified Mail Restricted Delivery $0.00
☐ Adult Signature Required $0.00
☐ Adult Signature Restricted Delivery $

Postmark Here JUL 21 2023

Postage $2.79
07/21/2023
Total Postage and Fees $10.69    GA 30068

Sent To W. Clark Millsap, Sheriff
Bartow County SO
Street and Apt. No., or PO Box No. 104 Zena Drive
City, State, ZIP+4® Cartersville, GA 30121

PS Form 3800, January 2023 PSN 7530-02-000-9047    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®.*

Cartersville, GA 30121

OFFICIAL USE

Certified Mail Fee $4.35
$3.55
0668
07

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy) $0.00
☐ Return Receipt (electronic) $0.00
☐ Certified Mail Restricted Delivery $0.00
☐ Adult Signature Required $0.00
☐ Adult Signature Restricted Delivery $

Postmark Here JUL 21 2023

Postage $3.03
07/21/2023
Total Postage and Fees $10.93    GA 30068

Sent To Bartow County Sheriff's Office
Street and Apt. No., or PO Box No. PO Box 476
City, State, ZIP+4® 104 Zena Drive
Cartersville, GA 30121

PS Form 3800, January 2023 PSN 7530-02-000-9047    See Reverse for Instructions



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Cartersville, GA 30121    OFFICIAL USE

| | | 0668 07 |

| Certified Mail Fee | $4.35 | |
| $ | $3.55 | JUL 21 2023 |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) | $ | |
| ☐ Return Receipt (electronic) | $ $0.00 | Postmark |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | Here |
| ☐ Adult Signature Required | $ $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $2.79 | |
| | | MARIETTA GA 30060 07/21/2023 |
| Total Postage and Fees | $10.69 | |

Sent To  Bartow County Jail
Street and Apt. No., or PO Box No.  104 Zena Drive
City, State, ZIP+4  Cartersville, GA 30121

PS Form 3800, January 2023 PSN 7530-02-000-9047    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Atlanta, GA 30334    OFFICIAL USE

| | | 0668 07 |

| Certified Mail Fee | $4.35 | |
| $ | $3.55 | JUL 20 2023 |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) | $ $0.00 | |
| ☐ Return Receipt (electronic) | $ $0.00 | Postmark |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | Here |
| ☐ Adult Signature Required | $ $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $2.79 | |
| | | MARIETTA GA 30060 07/21/2023 |
| Total Postage and Fees | $10.69 | |

Sent To  GA Dept. of Administrative Services
           RPR Management Division
Street and Apt. No., or PO Box No.  200 Piedmont Ave SE
City, State, ZIP+4  Suite 1804 West Tower
           Atlanta, GA 30334

PS Form 3800, January 2023 PSN 7530-02-000-9047    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

| | | 0668 07 |

| Certified Mail Fee | $4.35 | |
| $ | $3.55 | JUL 21 2023 |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) | $ $0.00 | |
| ☐ Return Receipt (electronic) | $ $0.00 | Postmark |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | Here |
| ☐ Adult Signature Required | $ | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $2.79 | |
| | | MARIETTA GA 30060 07/21/2023 |
| Total Postage and Fees | $10.69 | |

Sent To  Bartow County
         % Bartow County Bd. of Commissioners
Street and Apt. No., or PO Box No.  135 W. Cherokee Ave., Ste. 251
City, State, ZIP+4  Cartersville, GA 30120

PS Form 3800, January 2023 PSN 7530-02-000-9047    See Reverse for Instructions

**Card 1 (top-left):**

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Department of Adminstrative Service
Risk Management Services
200 Piedmont Ave, Ste 1220,
West Tower.
Atlanta, GA 30334

9590 9402 6956 1104 0647 69

2. Article Number (Transfer from service label)

7021 0350 0000 2250 5686

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
8/8/28

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053   Domestic Return Receipt

---

**Card 2 (top-right):**

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Kathy Gill
Bartow County Clerk
135 W. Cherokee Ave, Ste 251
Cartersville, GA 30120

9590 9402 8198 3030 9217 70

2. Article Number (Transfer from service label)

9589 0710 5270 0895 6907 27

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X D Andersen
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
D. ANDERSEN   7-24-23

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

JUL 24 2023

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053   Domestic Return Receipt

---

**Card 3 (bottom-left):**

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Peter Olson
Bartow County Administrator
135 W. Cherokee Ave.
Ste. 251
Cartersville, GA 30120

9590 9402 8198 3030 9217 87

2. Article Number (Transfer from service label)

9589 0710 5270 0895 6907 10

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X D Andersen
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
D. ANDERSEN   7-24-23

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

JUL 24 2023

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053   Domestic Return Receipt

---

**Card 4 (bottom-right):**

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Bartow County
c/o Bartow County Board of
Commissioners
135 W. Cherokee Ave. St. 251
Cartersville, GA 30120

9590 9402 7212 1284 8928 62

2. Article Number (Transfer from service label)

9589 0710 5270 0895 6907 41

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X D Andersen
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
D. ANDERSEN   7-24-23

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

JUL 24 2023

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053   Domestic Return Receipt

**Return Receipt 1 (top left)**

SENDER: *COMPLETE THIS SECTION*
- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
X *D. Anders* ☐ Agent ☐ Addressee

B. Received by (Printed Name): D. Andersson    C. Date of Delivery: 7-24-23

1. Article Addressed to:
Steve Taylor
Bartow County Commissioner
135 W. Cherokee Ave. Ste. 25
Cartersville, GA 30120

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

JUL 24 2023

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

9590 9402 8198 3030 9217 63

2. Article Number (Transfer from service label)
589 0710 5270 0895 6907 34

PS Form 3811, July 2020 PSN 7530-02-000-9053    Domestic Return Receipt

**Return Receipt 2 (top right)**

SENDER: *COMPLETE THIS SECTION*
- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
X *Tina Woodring* ☐ Agent ☐ Addressee

B. Received by (Printed Name): T. Woodring    C. Date of Delivery: 7-24-23

1. Article Addressed to:
Bartow County Jail
104 Zena Drive
Cartersville, GA 30121

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

9590 9402 8198 3030 9218 17

2. Article Number (Transfer from service label)
9589 0710 5270 0895 6906 73

PS Form 3811, July 2020 PSN 7530-02-000-9053    Domestic Return Receipt

**Return Receipt 3 (bottom left)**

SENDER: *COMPLETE THIS SECTION*
- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
X ☐ Agent ☑ Addressee

B. Received by (Printed Name):    C. Date of Delivery: 7-28-23

1. Article Addressed to:
GA Dept. of Administrative Services
Risk Management Division
200 Piedmont Ave SE
Ste. 1804, West Tower
Atlanta, GA 30334

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

9590 9402 8198 3030 9218 24

2. Article Number (Transfer from service label)
9589 0710 5270 0895 6906 66

PS Form 3811, July 2020 PSN 7530-02-000-9053    Domestic Return Receipt

**Return Receipt 4 (bottom right)**

SENDER: *COMPLETE THIS SECTION*
- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
X *Tina Woodring* ☐ Agent ☐ Addressee

B. Received by (Printed Name): T. Woodring    C. Date of Delivery: 7-24-23

1. Article Addressed to:
W. Clark Millsap, Sheriff
Bartow County Sheriff's Office
104 Zena Drive
Cartersville, GA 30121

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

JUL 24 2023

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

9590 9402 8198 3030 9217 94

2. Article Number (Transfer from service label)
9589 0710 5270 0895 6907 03

PS Form 3811, July 2020 PSN 7530-02-000-9053    Domestic Return Receipt

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Bartow County Sheriff's Office
P.O. Box 476
104 Zena Dr.
Cartersville, GA 30121

9590 9402 8198 3030 9218 00

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X Greg Homer ☐ Agent
 ☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery

Greg Ha

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

CARTERSVILLE, GA
JUL
25
2023
USPS 30114 0098

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number (Transfer from service label)

9589 0710 5270 0895 6906 97

PS Form 3811, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt

# EXHIBIT 2

To Complaint

STATE OF FLORIDA

COUNTY OF CHARLOTTE

## <u>AFFIDAVIT OF EMIL A. DAMEFF, M.D., CCHP</u>

I, Emil A. Dameff, M.D., CCHP, personally appeared before the undersigned officer duly authorized to administer oaths in the State of Florida, who having been duly sworn, depose and state as follows:

1.

My name is Emil A. Dameff, M.D., CCHP. I am over the age of twenty-one years, I suffer from no legal disabilities, and I make this Affidavit under oath based upon my own personal knowledge and review of the medical records of James John Duncan ("Mr. Duncan"), as well as my own professional knowledge, education, training, and experience outlined in my CV, attached hereto and incorporated herein by reference as Exhibit A. I am competent in all respects to testify regarding the matters set forth herein.

2.

After receiving my undergraduate degree from Southern College in Collegedale, Tennessee, I graduated with a medical degree from the University of Miami in 1991 and completed my internship in Internal Medicine at the University of Florida in 1992. I have been continuously licensed by the appropriate regulatory agency as a physician to practice medicine in the state of Florida since 1992 and have been continuously practicing medicine in Florida since that time. I am actively engaged in private practice that includes rendering care and treatment to patients at ShorePoint Health Punta Gorda (Formerly Riverside), where I have been regularly and actively working full time since December 1999. I am on the ShorePoint Health Punta Gorda Hospital Board of Trustees and am currently serving as President.

3.

In February of 1993, I began my career in correctional medicine with the Florida Department of Corrections, working as a Clinic Coordinator and institutional Chief Health Officer before becoming a Regional Director of Health Care for the State of Florida. From 2001-2009 I was the Regional Medical Director for Wexford Health Sources Inc, heading multiple projects for the company, including development of the Computer-Assisted Reception Process (CARP) for the Florida Department of Corrections; a statewide Electronic Medical Record implementation for the Mississippi Department of Corrections; and the ongoing expansion of telemedicine for the West Virginia Division of Corrections. From 2009 to 2015 I served as the Corporate Medical Affairs Director for Wexford Health, where I lead the team responsible for establishing the company's medical protocols and directs the clinical decision making of our field Regional Medical Directors and staffs. Since 2015 I have been regularly serving as a consultant to correctional health care companies and providing medical services to inmates. I spend approximately 32 hours per week throughout the year directing medical care for and providing medical care directly to inmates. As a part of my daily responsibilities, I supervise and oversee the clinical practice of nursing professionals in jails and prisons, including but not limited to registered nurses, licensed practical nurses, and nurse practitioners.

4.

I have been licensed as a Certified Correctional Health Professional since 2011, and currently maintain this license.

5.

I have actual professional knowledge and experience in the area of practice in which my opinions are given as a result of having been regularly engaged in the active practice of such area of specialty of my profession since 1992 and have been specifically providing medical services to inmates since 1993. Furthermore, for greater than three of the last five years prior to the negligence described below, I have been engaged in the active practice of medicine in the correctional health environment. I have been actively and regularly involved in diagnosing, assessing, planning for care, and treating inmates in the correctional health environment who suffer from the same or similar medical conditions as Mr. Duncan while an inmate in the Bartow County Jail.

6.

From my background, training, and experience in the care and treatment of prisoners and inmates, I am familiar with the standards of care applicable to prisons as well as jails similar to Bartow County Jail. Additionally, as a member of the interdisciplinary care team, I regularly supervised and instructed nursing professionals in jails and prisons, including but not limited to registered nurses, licensed practical nurses, nurse practitioners, and others in providing care and services to jail and prison inmates.

7.

Based on my education, training and experience I am familiar with that degree of care and skill ordinarily exercised by correctional facilities, nurses, nurses' aides, certified nursing assistants, registered nurses, licensed practical nurses, nurse practitioners, medical doctors, and others under similar conditions and like surrounding circumstances to those considered in this

Affidavit. More specifically, I have actual professional knowledge and experience in connection with caring for inmates in a correctional facility, including but not limited to residents with the medical conditions and diagnoses experienced by Mr. Duncan with sufficient frequency to establish an appropriate level of knowledge described in this Affidavit. I am competent to give the opinions contained in this Affidavit.

### 8.

In connection with providing my opinions in this Affidavit, I have reviewed the following medical records of Mr. Duncan in formulating my opinion:

    A. Correct Health Records

    B. Piedmont Cartersville Hospital Medical Records

    C. Metro Atlanta Ambulance Service Records

    D. Harbin Clinic Records

### 9.

Each of the opinions that I express herein are given to a reasonable degree of medical probability.

### 10.

As the factual basis for my opinions herein, based upon my review of the foregoing medical records, I have assumed the following facts to be true and the following is a brief overview of pertinent events that occurred in this matter:

4

A. On August 15, 2022, Mr. Duncan went through the intake process at Bartow County Jail in Georgia. His initial blood pressure reading was 168/100 and a repeat reading was 162/98. It was documented that he takes Norvasc 10mg for HTN.

B. On August 18, 2022, Mr. Duncan submitted a written medical request informing the Bartow County Jail staff and medical team of his hypertension and need for blood pressure medication. Bartow County Jail Nurse Williams responded in writing on August 20, 2022 that "[he was] currently on hypertension medication...."

C. On September 1, 2022, LPM Madison Bankston documented in Mr. Duncan's medical file that he reported to the infirmary complaining of chest pain and shortness of breath for the past two days. She further documented: EKG-states sinus rhythm; lung sounds clear; heart sounds normal; BP 141/80.

D. On September 1, 2022 Mr. Duncan submitted a written medical request informing the Bartow County Jail staff and medical team that he was experiencing chest pains and shortness of breath. Bartow County Jail Nurse Bankston responded in writing on September 1, 2022 with: "Seen in medical today. I have you scheduled to follow up with our medical provider next week. Please continue taking medications as prescribed and notify staff if symptoms begin again."

E. On September 8, 2022, NP Charlotte Hall documented in Mr. Duncan's medical file that he complained of chest pain in the morning when he came to the med-cart to get his medications and that it worsens when he breathes.

F. On September 23, 2022 Mr. Duncan submitted a written medical request informing the Bartow County Jail staff and medical team that he was experiencing chest pain and numbness in his left arm, that he could not feel his hand, and that the pain awoke him

from sleep. He further informed them that he had been told by Jail staff and medical that it was not a heart problem and he expressed concern about something happening, especially if it could be prevented. On September 23, 2022, Nurse Joseph responded in writing with: "you are on pain med and you have a chronic care clinic visit scheduled to see the doctor."

G. On September 29, 2022, Mr. Duncan submitted a written medical grievance informing the Bartow County Jail staff and medical team that he had been having chest pains and that he did not know why the problem was not being addressed. He further apologized "for any inconvenience." Nurse Joseph responded on the same day in writing with "you have labs ordered and you have a chronic care visit scheduled with the doctor. Explain the chest pains in more detail. What is it you are wanting? If you feel it is a heart attack, then tell the tower. Do you need to be in medical? You have been caught hoarding meds. You are in your 40's and on a few meds, do not be laying down after eating. Get some activity in. Let the tower know if you are just hurting so back that you cannot wait until the scheduled doctor's visit."

H. On October 5, 2022, Mr. Duncan submitted a written medical request informing the Bartow County Jail staff and medical team that he thought perhaps his blood pressure medication might need to be changed and that was why his chest was hurting. Nurse Shirley responded on the same day in writing with "you only take it 42% of the time. I will place you on BP checks for a couple of days." LPN Christina Catron noted in his medical records that he had an elevated blood pressure reading at his vistal sign checks but that no new orders were entered at the time, and that med compliance was 37%.

I. On October 7, 2022, Mr. Duncan submitted a written medical request informing the Bartow County Jail staff and medical team that he had blurry vision, and that his eyes were burning and he looked like he had busted blood vessels in them. Nurse Bankston responded on the same day in writing with "The medical provider started you on antibiotic eye drops. You can use them twice daily at the pill cart."

J. On October 17, 2022, Mr. Duncan submitted a written medical request informing the Bartow County Jail staff and medical team that he believed his blood pressure medication was causing severe chest pains so he stopped taking it and then when he started taking it again, the severe chest pain returned. He said his pain was not as bad when he was not taking the blood pressure medication. He further informed them that he did need to take blood pressure medication but that he wanted to change medications because of this. He also asked when his provider appointment was to take place. Nurse Bankston responded on the same day in writing with "I've got you down for more vital sign checks this week, scheduled to see the medical provider and you have a chronic care appointment coming up as well."

K. On October 18, 2022, LPN Rebecca Hamilton documented in Mr. Duncan's medical file that he returned to medical at 11:34 complaining of chest pain. His BP was noted to be 209/124 with manual reading of 196/122. She noted that he refused to take his Norvasc and stated that it made his chest hurt. She notified the provider and received orders to perform an EKG and that pt was on OBS in infirmary.

L. On October 18, 2022, LPN Rebecca Hamilton documented in Mr. Duncan's medical file that he returned to medical at 12:28 and had decreasing blood pressure, and reported no

chest pain at the time. She indicated he wanted to go back to the dorm. She advised Mr. Duncan to notify medical if issues persist or worsen.

M. On October 18, 2022, LPN Christina Catron documented in Mr. Duncan's medical file that he returned to medical at 22:00 with complaints of chest pain and that he was complaining about his medication. BP 186/122 103. She further noted that he "agreed to take the Norvasc 10MG x 1 dose and Pepcid 20MG x 1 dose" and that she performed an EKG and called the results into the on-call provider who informed her that he should go to the ER for evaluation.

N. On October 19, 2022 at 21:39, LPN Sheila Williams documented the following in Mr. Duncan's medical file: Inmate came back to medical with c/o chest pain burning , walked in steady gait no guarding of arm or clinching of chest V/S were assessed 196/125,18, 97.4, 110,100 %, then, v/s were taken manually 200/110 and call placed to Mika NP informed her of inmates condition and complaint , New orders for Norvasc 10 mg po, and nitro si and inmate is noncompliant with medications and states that he don't take them because his chest hurts if he takes them and if he don't take them. We informed him that the Dr. has ordered him medications, he states that he is not taking them he wants to go to the hospital, and if we don't send him to the hospital he will call his wife and tell her to call 911 to take. Inmate continued to yell and holler at the officer, and nurses that we are going to let him die. Inmate stormed out of medical cursing that he will not take his medication and his wife will call 911 for him.

O. On October 19, 2022, Mr. Duncan was transported to Piedmont Cartersville Medical Center where he was diagnosed with acute ST elevation myocardial infarction (STEMI) due to 100% occlusion of mid portion of left anterior descending (LAD) coronary artery

(HC).  He received a stent and subsequently experienced a non-ST elevated myocardial infarction) (HC) (NSTEMI) on October 20, 2022.  Further evaluation revealed ischemic cardiomyopathy, Ejection Fraction of 20-34%.  Medical therapy was initiated for treatment of coronary artery disease and ischemic cardiomyopathy.  Orders were placed for Life Vest (external wearable defibrillator vest) but he did not receive one before he was discharged from Cartersville Medical Center on October 21, 2022 and was ordered to report back to Bartow County Jail.

P.  On October 24, 2022 LPN Patricia Lee at the Bartow County Jail documented in Mr. Duncan's medical file that he had returned from the hospital and that he needed a Life Vest.

Q.  On October 25, 2022 Mr. Duncan reported to the Bartow County Jail infirmary with shortness of breath.  He was seen by Christina Catron, LPN.  He informed her he was going to lay down and try to rest.  He was returned to Med 4.

R.  On October 28, 2022, NP Kelly Kurtz documented: Infirmary pt s/p hospital visit MI with stent placement supposed to get a life vest.  Nurse Kurtz further noted:  Needs cardiology consult life vest in the works get all medical records from last hospital stay…s/p MI with stents, life vest and cardiology get records from hospital. Fu MD in 14 week.

S.  On November 9, 2022, Phillip Nowlin, MD documented: CCC HTN MI, was in the hospital. He got out of the hospital 10-23-22. It was recommended that he have a life vest.

T.  On November 12, 2022, Mr. Duncan was sent to the Emergency Department at Piedmont Cartersville Hospital.  LPN Jennifer Pulido documented that his roommate notified her

9

that Mr. Duncan had fallen when he stood up. When Nurse Pulido arrived in his room, he was sitting on the bed, diaphoretic and pale. BP 73/53, 54, 95%, 97.1. She notified security to contact EMS for transport to Piedmont Cartersville Hospital. She contacted S. Hatfield for orders.

U. On November 13, 2022 at 8:00, LPN Jennifer Pulido documented that she contacted Piedmont Cartersville and spoke to a nurse in the ER who informed Nurse Pulido that Mr. Duncan was still I the ER but would be transferred to a room for admission as soon as one was available. The doctor had not seen him that morning.

V. On November 13, 2022 at 8:00, LPN Patricia Lee documented that Mr. Duncan was to be admitted to Cartersville Medical Center for possible heart failure. He was readmitted to Piedmont Cartersville Medical Center for evaluation of syncope. He was discharged on November 15, 2022 with the following diagnoses: vasovagal syncope; transient hypotension; volume depletion; coronary disease status post stent; chronic combined systolic and diastolic heart failure with an Ejection Fraction of 30-35%.

11.

Based on my education, training, experience and the facts contained in the records I reviewed, it is my opinion that Bartow County and Correct Health and their nurses, nurses' aides, nurse practitioners, medical doctors and other staff involved in the care of Mr. Duncan, violated the standard of care and failed to exercise that degree of care and skill ordinarily exercised by medical professionals in the correctional health environment generally under the same or similar conditions and like surrounding circumstances in the care and treatment of Mr. Duncan.

12.

Based upon my review of the medical records and materials described above, and my education, training, and expertise, it is my professional opinion that the applicable standard of care required the Bartow County and Correct Health staff to monitor, supervise, and care for residents of the correctional facility, including Mr. Duncan.

13.

More specifically, it is my opinion that the standard of care required Bartow County and Correct Health and their nurses, nurses' aides, nurse practitioners, medical doctors and other staff and medical professionals involved in the care of Mr. Duncan to:

A. Diagnose Mr. Duncan as having an evolving cardiac problem;

B. Properly evaluate Mr. Duncan's changing condition;

C. Properly assess and evaluate Mr. Duncan as having a heart attack and/or being at increased risk of having a heart attack;

D. Promptly report signs and symptoms of an emerging cardiac condition to a cardiologist;

E. Promptly, but no later than September 1, 2022 when Mr. Duncan reported experiencing chest pain and shortness of breath, refer him to a cardiologist for cardiac workup to properly evaluate his emerging cardiac condition; and

F. Immediately procure a Life Vest for Mr. Duncan upon his return to Bartow County Jail from Cartersville Medical Center.

14.

It is my opinion, based on my education, training, experience, and my review of the aforementioned records, that Bartow County and Correct Health and their nurses, nurses' aides, nurse practitioners, medical doctors and other staff and medical professionals involved in the care of Mr. Duncan violated the standard of care for nurses, nurses' aides, nurse practitioners, medical doctors and other staff involved in the care and treatment of Mr. Duncan in at least the following manners:

G. Failing to diagnose Mr. Duncan as having an evolving cardiac problem;

H. Failing to properly evaluate Mr. Duncan's changing condition;

I. Failing to properly assess and evaluate Mr. Duncan as having a heart attack and/or being at increased risk of having a heart attack;

J. Failing to promptly report signs and symptoms of an emerging cardiac condition to a cardiologist;

K. Failing to promptly, but no later than September 1, 2022 when Mr. Duncan reported experiencing chest pain and shortness of breath, refer him to a cardiologist for cardiac workup to properly evaluate his emerging cardiac condition;

L. Failing to seek and/or obtain timely review of Mr. Duncan's signs and symptoms by a cardiologist;

M. Allowing Mr. Duncan's evolving cardiac condition to be untreated for weeks without proper intervention and treatment;

N. Failing to provide timely and proper cardiac intervention to Mr. Duncan;

O. Failing to immediately procure a Life Vest for Mr. Duncan upon his return to Bartow County Jail from Cartersville Medical Center.

15.

It is my opinion that the failure of Bartow County and Correct Health and their nurses, nurses' aides, nurse practitioners, medical doctors and other staff and medical professionals involved in the care of Mr. Duncan's care to adhere to the standard of care as outlined above resulted in significant injuries and pain and suffering to Mr. Duncan.   Had they adhered to the standard of care as outlined above, Mr. Duncan would not have experienced his heart attacks and would not have suffered the severe heart damage that he did.

16.

This Affidavit is not intended to provide an exhaustive listing of all of the opinions which I may have concerning the matters at issue in the case and I reserve the right to express additional opinions based on any additional information which may come to my attention as the case proceeds. The opinions expressed herein are not intended to and should not be construed to foreclose or exclude opinions that other negligent acts or omissions and regulatory/statutory violations may have also occurred or contributed to Mr. Duncan's outcome, but rather is given to meet the limited requirements of O.C.G.A. §9-11-9.1 to set forth at least one act of negligence for the Defendants in question.

FURTHER AFFIANT SAYETH NAUGHT.

I certify under penalty of law that the foregoing is true and correct.

Signed, this ___30___ day of _June_, 2023.

EMIL A. DAMEFF, M.D., CCHP

SWORN TO AND SUBSCRIBED before me this 30 day of ___June___, 2023.

NOTARY PUBLIC                          [seal]

MINERVA GONZALEZ
Notary Public - State of Florida
Commission # HH 035819
My Comm. Expires Dec 19, 2024
Bonded through National Notary Assn.

14

# EXHIBIT 3

To Complaint

STATE OF GEORGIA

COUNTY OF FULTON

## AFFIDAVIT OF JOSHUA M WILLIS, MD, FACC, FSCAI

I, Joshua M Willis, MD, FACC, FSCAI, personally appeared before the undersigned officer duly authorized to administer oaths in the State of Georgia, who having been duly sworn, depose and state as follows:

1.

My name is Joshua M Willis, MD, FACC, FSCAI. I am over the age of twenty-one years, I suffer from no legal disabilities, and I make this Affidavit under oath based upon my own personal knowledge and review of the medical records of James John Duncan ("Mr. Duncan"), as well as my own professional knowledge, education, training, and experience outlined in my CV, attached hereto and incorporated herein by reference as Exhibit A. I am competent in all respects to testify regarding the matters set forth herein.

2.

I graduated with a medical degree from the Howard University College of Medicine in 2002. I completed my Internal Medicine Residency at Tulane University in 2005, a Cleveland Clinic General Cardiovascular Disease Fellowship in 2010, and a University of Florida Interventional Cardiology Fellowship in 2011. I have been continuously board certified by the American Board of Internal Medicine in the disciplines of General Cardiovascular Disease and Interventional Cardiology since 2010 and 2011, respectively. I have been continuously licensed by the appropriate regulatory agency as a physician to practice medicine since 2002 and have been specifically licensed to practice medicine in Georgia since 2011 (License No. 66373). I am

1

actively engaged in private practice that includes rendering care and treatment to patients at Wellstar Douglas Hospital, where I have been regularly and actively working full time as an Interventional Cardiologist and the Medical Director since 2016. As a part of my regular daily responsibilities, I not only spend approximately 90% of my time engaged in my own clinical practice caring for cardiac patients, but I also supervise and oversee the clinical practice of other doctors as well as nursing professionals, including but not limited to registered nurses, licensed practical nurses, and nurse practitioners.

3.

I have actual professional knowledge and experience in the area of practice in which my opinions are given as a result of having been regularly engaged in the active practice of interventional cardiology since beginning my General Cardiology Fellowship in 2007. Furthermore, for greater than three of the last five years prior to the negligence described below, I have been engaged in the active practice of interventional cardiology in Georgia. I have been actively and regularly involved in diagnosing, assessing, planning for care, and treating cardiac patients who suffer from the same or similar medical conditions as Mr. Duncan while an inmate in the Bartow County Jail.

4.

From my background, training, and experience in the care and treatment of patients, I am familiar with the standards of care applicable to patients similar to Mr. Duncan. Additionally, as a member of the interdisciplinary care team, I have regularly supervised and instructed other doctors as well as nursing professionals, including but not limited to registered nurses, licensed

2

practical nurses, and nurse practitioners, in providing care and services to patients in need of cardiac-related medical care and treatment.

5.

Based on my education, training and experience I am familiar with that degree of care and skill ordinarily exercised by nurses, nurses' aides, certified nursing assistants, registered nurses, licensed practical nurses, nurse practitioners, medical doctors, and others under similar conditions and like surrounding circumstances to those considered in this Affidavit. More specifically, I have actual professional knowledge and experience in connection with caring for patients with the medical conditions and diagnoses experienced by Mr. Duncan with sufficient frequency to establish an appropriate level of knowledge described in this Affidavit. I am competent to give the opinions contained in this Affidavit.

6.

In forming my opinions rendered in this Affidavit, I have relied, in part, on the following medical literature found in the PubMed search engine:

| | |
|---|---|
| Reference 1 | ***Blood pressure control and primary prevention of stroke: Summary of the recent clinical trial data and meta- analyses*** Curr Hypertens Rep. 2013; 15(6): 559–574. Published online 2013 Oct 25. doi: 10.1007/s11906-013-0401-0 Pub Med ID 24158454 |
| Reference 2 | ***Assessment of Cardiovascular Disease Risk: A 2022 Update*** Endocrinol Metab Clin North Am 2022 Sep;51 (3):483-509 PMID 35963625 |
| Reference 3 | ***Withdrawal of pharmacological treatment for heart failure in patients with recovered dilated cardiomyopathy (TRED-HF):*** an open-label, pilot, randomised trial Lancet 2019 Jan 5;393(10166):61-73 PMID: 30429050 |

3

| Reference 4 | *2013 ACCF/AHA guideline for the management of heart failure: a report of the American College of Cardiology Foundation/American Heart Association Task Force on Practice Guidelines* PMID: 23747642 |
| --- | --- |

7.

In connection with providing my opinions in this Affidavit, I have reviewed the following medical records of Mr. Duncan in formulating my opinion:

A. Correct Health Records (August through November 2022)

B. Piedmont Cartersville Hospital Medical Records (August through November 2022)

C. Metro Atlanta Ambulance Service Records

D. Harbin Clinic Records

8.

Each of the opinions that I express herein are given to a reasonable degree of medical certainty.

9.

As the factual basis for my opinions herein, based upon my review of the foregoing medical records, I have assumed the facts contained in this Affidavit to be true.

10.

The following is a brief overview of pertinent events that occurred in this matter:

A. James Duncan is a 45 yr old gentleman with the following CAD risk factors:

    1. Hypertension-poorly controlled

4

2. Active tobacco abuse greater than 20 pack year history

3. Premature Family Hx of Coronary Artery Disease (CAD)

4. Father-CAD in his 50's

5. Grandfather CAD in his 40's

6. Dyslipidemia (bad cholesterol)-untreated

7. Prior recreational Methamphetamine use

B. James was in his usual state of health until August 31, 2022 when he began complaining of chest pain and shortness of breath by way of written correspondence to the Bartow County Jail Nursing staff. He sent five messages in total, all with complaints of chest pain that was occurring with increasing frequency and severity. Despite his multiple CAD risk factors, the only work up that was performed was a 12 lead ECG on September 1, 2022. Unfortunately his chest pain continued to progress. On October 19th, when his chest pain was not being addressed he requested that his wife call 911. He was transported to Piedmont Cartersville Medical Center where he was diagnosed with an anterior STEMI and subsequent ischemic cardiomyopathy.

C. Below are the nursing notes documenting his worsening chest pain and the timeline of response taken directly from the Correct Health Records:[1]

1.

Issue ID: 29095688 LastStatus:

Last Assigned to:

Medical

---

[1] These portions have been copied and pasted verbatim (including misspellings) directly from the medical records.

For 291580: JAMES DUNCAN ZPASS PASS 01 on 8/31/2022 3:49:26 PM Dates and Times are

presented in Eastern Time (US &Canada)

Closed by Nurse Bankston on 9/1/2022 4:09:20 PM None on 9/1/2022 4:09:19 PM

been haveing chest pains short breth today

Submitted by291580: JAMES DUNCAN ZPASS PASS 01 on 8/31/2022 3:49:26PM

Seen in medical today. I have you scheduled to follow up with our medical provider next week.
Please continue taking medications as prescribed and notify staff fi symptoms begin again

Responded by Nurse Bankston on 9/1/2022 4:09:19 PM


    2.

Issue ID: 29338529 Last Status:

Last Assigned to:

Medical

For 291580: JAMES DUNCAN ZPASSPASS 01 on 9/22/2022 8:20:44 PM Dates and Times are
presented ni Eastern Time (US &Canada)

Closed by Nurse Joseph on 9/23/2022 11:18:01 AM None on 9/23/2022 11:17:59 AM

i've been getting random chest pain and numness in my left arm the pain woke me up out of my
sleep,and i couldnt feel my hand i have been to medical 2 times and have been asured that its not
a heart problem ether way i havent been told what the problem is amd it shouldnt be acurring i
dont want to have someting happen to me that could have been provented sincerly james Duncan


Submitted by291580: JAMES DUNCAN ZPASS PASS 01 on 9/22/2022 8:20:44 PM

you are on pain med and you have a chronic care clinic visit scheduled to see the doctor.
Responded by Nurse Josephon 9/23/2022 11:17:59 AM


    3.

Issue ID: 29415805 Last Status:

Last Assigned to:

Grievance – Medical

For 291580:JAMES DUNCAN ZPASSPASS01 on 9/29/2022 4:05:33 PM Dates and Times are

presented ni Eastern Time (US &Canada) Closed by Nurse Joseph on 9/29/2022 5:02:22 PM None

on 9/29/2022 5:02:20 PM

been having chest pains dont know why cant get this problum adressed sorry for any inconvenience

Submitted by 291580: JAMES DUNCAN ZPASS PASS 01 on 9/29/2022 4:05:33 PM

you have labs ordered and you have a chronic care visit scheduled with a doctor. explain the chest
pains more in detail. what is it that you are wanting? If you feel ti is heart attack, then tell the
tower. Do you need to be in medical? you have been caught hoarding meds. you are in your 40's
and on a few meds, do not be laying down after eating. get some activity in. Let the tower know fi
you are just hurting so bad that you cannot wait until the scheduled doctor's visit.

Rejected by Nurse Joseph on 9/29/2022 5:02:20 PM

Medical

For291580:JAMES DUNCAN ZPASS PASS 01 on 10/4/2022 2:50:10 PM Dates and Times are

presented in Eastern Time (US &Canada)

4.

Issue ID: 29468838

Last Status: Closed by 291580: JAMES DUNCAN on 10/5/2022 2:30:22 PM

Last Assigned to: None on 10/5/2022 6:54:14 AM

i think we might need to change my bp med i think thats why my chest herts Submitted by 291580:

JAMES DUNCAN ZPASS PASS 01 on 10/4/2022 2:50:11 PM you only take it 42 % of the time.

I wil place you on BP checks for a couple days Final Response by Nurse Shirley on 10/5/2022

6:54:14 AM

5.

Nursing Progress Note

DOB: 5/24/1977 (45y) Location:

Date: 10/19/2022 Type of Note: Progress Note

Progress Note

Notes:

Time : 21:39

Inmate came back to medical with c/o chest pain burning ,walked insteady gait no guarding of arm or clinching of chest V/S were assessed 196/125, 18.97.4, 110.100 %, then.v /s were taken manually 200/110 and call olaced to MikaN P informed her of inmates condition and complaint. New orders for Norvasc 10 mg po, and nitro sI and inmate is noncompliant with medications and states that he don't take them because his crest hurts it he lakes them and it he don't take them. We informed him that the Dr. has ordered him medications, he states that he is not taking them he wants to go to the hospital, andif we don't send him to the hospital he wil call his wife and tell her to call 911 to take. Inmate continued to yell and holler at the officer, and nurses that we are going to let him die . Inmate stormed out of medical cursing that he will not take his medication and his wife will call 911 for him.

Follow-up Needed:

NO ANSWER PROVIDED

User Name

WILLIAMS, SHEILA, LPN

Save Log

Nursing Progress Note Progress Note for use by nursing stat

Patient Name: DUNCAN, JAMES JOHN Patient Number. 291580

Location:

DOB: 5/24/1977

Facility. BARTOW COUNTY JAIL

Electronically Signed By WILLIAMS, SHEILA, L P on 10/19/2022 22:13:03

AuditDateAndTime 10/19/2022 22:13:03

D. On October 19, 2022 his wife activated EMS for evaluation of his chest discomfort. Twelve lead ECG revealed: Normal Sinus Rhythm, normal QRS axis, ST segment elevation consistent with anterior ST segment elevation myocardial infarction.

E. He was transported to Piedmont Cartersville Medical Center for Emergency Cardiac Catheterization and primary PCI (stent placement for heart attack treatment).

F. Dr Chizner performed emergent left heart catheterization (LHC) via right radial approach. Culprit vessel was the LAD 100% occluded reduced to 0% following percutaneous coronary intervention (PCI-opening the artery with balloon and stents, entering the blood vessel system at the wrist). Overnight he developed more chest discomfort and ventricular tachycardia (abnormal heart rate from the bottom half of his heart that is potentially fatal).

G. Initial cardiac catheterization revealed another flow limiting lesion in the RCA, scheduled to be treated in a couple of days. Given the unexpected chest pain and heart rhythm disturbance, angiography of the left system was performed. It confirmed patency of the stent in the LAD placed for treatment of his heart attack. The right coronary artery (RCA) was treated at that time with balloon pre dilatation followed by stent placement.

H. Subsequent evaluation revealed ischemic cardiomyopathy, Ejection Fraction of 20-35% (severely weakened heart placing him at high risk of sudden cardiac death).

I. Guideline directed medical therapy was initiated for treatment of coronary artery disease and ischemic cardiomyopathy. Orders were placed for Life Vest (external wearable

defibrillator vest) given his risk of sudden cardiac death. Unfortunately, he did not receive the LifeVest.

J. He was re-admitted to the hospital on November 12, 2022 for evaluation of syncope. No sinister etiology was discovered, i.e. no evidence of ventricular arrhythmia and aborted sudden cardiac death. He was managed conservatively. LifeVest was re-ordered but not fitted prior to discharge back to jail.

<u>Discussion and Interpretation of Medial Records</u>

11.

James John Duncan suffered an acute anterior wall myocardial infarction (heart attack) after complaining of stuttering chest discomfort from August 31, 2022 until his wife activated EMS and had him picked up from the Bartow County Jail on October 19th.

12.

James has several modifiable risk factors predisposing him to heart attack including:

1. Poorly treated Hypertension

2. Dyslipidemia

3. Tobacco abuse

13.

On several occasions he endorsed chest discomfort when taking Norvasc, however, this medication was not transitioned to another class of antihypertensive, e.g. diuretic, beta blocker etc.

His blood pressure is poorly controlled on several encounters, with the highest being 209/124 on 10/18/2022 at 11:34 PM. This is the day prior to his anterior wall myocardial infarction.

14.

Hypertension has a strong causal relationship to major adverse cardiovascular events, i.e. stroke, heart attack and cardiovascular related death. For every 20 point increase in systolic blood pressure or 10 point increase in diastolic blood pressure above 115/75 mm Hg, heart attack and stroke risk double. (Reference 1) The chest pain visit on 11/18/22, his blood pressure was 196/125 mm Hg, repeat measurement 200/110 mm Hg, consistent with increased risk of 16-32 times normal.

15.

Dyslipidemia was diagnosed during the time of his incarceration. Based on the ASCVD risk calculator, his 10 year risk for heart disease or stroke was 11.7%. Optimal risk factor management would reduce this risk to 1.2%. (Reference 2) The recommendation based on risk is for moderate to high intensity statin for risk reduction of major adverse cardiovascular events. Statin medication was never started.

16.

Smoking cessation was not addressed in any clinical documentation.

17.

James had several visits with the medical staff spanning August to October with complaints of chest pain. On September 1st, 2022 at 15:38 he endorsed substernal, intermittent chest pain, characterized as aching, associated with dyspnea, sudden onset following climbing a flight of stairs. ECG was obtained, interpreted as Normal Sinus Rhythm, physical examination documented as normal heart and lung exam. No further evaluation was undertaken.

18.

He continued to complain of chest pain on 9/22/22, 9/29/22 and 10/5/2022 going so far as to relay that he knows something is wrong and he does not want anything to happen that is preventable.

19.

Despite his complaints consistent with accelerating angina, no further evaluation was performed. In alignment with recommendations of ACC, stress testing and transthoracic echocardiography should have been performed for risk stratification and mitigation. Not only was no further testing performed, he had to have a family member activate emergency medical services on his behalf when his continued complaints of chest discomfort were repeatedly ignored.

20.

On October 19th he was hospitalized for acute anterior wall myocardial infarction. Multivessel coronary artery disease was discovered and appropriately managed by Dr Chizner - PCI of the LAD and staged PCI of the RCA. Unfortunately, the damage was already done.

12

21.

His Ejection Fraction (EF) following primary PCI (heart attack treatment with stent placement) was less than 35% (normal is 50-60%). This finding carries significant implications, see below.

A. Heart Failure carries a 5 year, 50% mortality penalty for all comers, i.e. he has a 50% risk of dying in the next five years.

B. He is at high risk for sudden cardiac death-if his EF does not improve to >35% within 90 days of his heart attack, he will be referred for Implantable Cardioverter Defibrillator (ICD) for primary prevention of sudden cardiac death as per AHA guidelines, see below:

   **Class I**

   1. ICD therapy is recommended for primary prevention of SCD to reduce total mortality in selected patients with non- ischemic DCM or ischemic heart disease at least 40 days post-MI with LVEF of 35% or less and NYHA class II or III symptoms on chronic GDMT, who have reasonable expectation of meaningful survival for more than 1 year (355,593). (Level of Evidence: A) (Reference 4)

C. He requires Guideline Directed Medical Therapy consisting of Beta Blocker, Mineralocorticoid antagonist, ACE/ARB or ARNI and SGLT 2 inhibitor with the goal of increasing his Ejection Fraction. These therapies will have to be continued indefinitely. We know from trial data that discontinuation of these meds results in recurrence of cardiomyopathy.

22.

*Many patients deemed to have recovered from dilated cardiomyopathy will relapse following treatment withdrawal. Until robust predictors of relapse are defined, treatment should continue indefinitely.* (Reference 3)

23.

*In short, James John Duncan had complaints of accelerating angina that went unrecognized and untreated while he was incarcerated, despite his complaints on multiple occasions from August to October of 2022. Despite being clearly indicated, risk factor reduction and further testing, i.e. stress testing, echocardiography, to establish his risk profile were not performed. Even on the day of his myocardial infarction, he had to have his wife call 911 to pick him up from jail and transport him to Piedmont Cartersville Medical Center when his complaints of chest pain were ignored. The end result is that he suffered a heart attack that severely damaged his heart, potentially shortening his lifespan and relegating him to taking guideline directed medical therapy for the rest of his life. Furthermore, he may have to undergo an additional surgical procedure, i.e. ICD implantation for primary prevention of sudden cardiac death.*

24.

*With a reasonable degree of medical certainty, I can say that the standard of care was breached and that the breach is causally related to his heart attack and subsequent ischemic cardiomyopathy. These events could have been prevented had the standard of care not been violated.*

25.

FINAL OPINIONS:

A. I am familiar with the standard of care for patients like this.

B. Based on my education, training, experience and the facts contained in the records I reviewed, it is my opinion that the following medical providers fell below the applicable standard of care: Madison Bankston, LPN, Nurse Joseph, Nurse Shirley, Sheila Williams, LPN, Phillip Nolan, MD and other supervising physicians.

C. The specific care that fell below the applicable standard of care is outlined above and herein.

D. As a direct result of that medical negligence, Mr James John Duncan suffered a heart attack and subsequent heart damage requiring lifelong medical therapy and potentially a significant reduction in life expectancy and quality of life.

E. It is more likely than not had Mr James John Duncan been provided care that met the applicable standard of care he would not have suffered a myocardial infarction and ischemic cardiomyopathy.

F. All of my opinions herein are with a reasonable degree of medical certainty

26.

This Affidavit is not intended to provide an exhaustive listing of all of the opinions which I may have concerning the matters at issue in the case and I reserve the right to express additional opinions based on any additional information which may come to my attention as the case proceeds. The opinions expressed herein are not intended to and should not be construed to foreclose or exclude opinions that other negligent acts or omissions and regulatory/statutory violations may have also occurred or contributed to Mr. Duncan's outcome, but rather is given to meet the limited requirements of O.C.G.A. §9-11-9.1 to set forth at least one act of negligence for the Defendants in question.

FURTHER AFFIANT SAYETH NAUGHT.


I certify under penalty of law that the foregoing is true and correct.

Signed, this _22nd_ day of _June_, 2023.

_S. Willis, MD_
JOSHUA M. WILLIS, MD, FACC, FSCAI


SWORN TO AND SUBSCRIBED before me this _22nd_ day of _June_, 2023.


NOTARY PUBLIC                    [seal]

16